ANTHONY B. COBURN ET AL. *v.* LENOX HOMES, INC.

HEALEY, PARSKEY, ARMENTANO, SHEA and WRIGHT, Js.

Argued December 4, 1981—decision released March 2, 1982

*Warren P. Joblin,* for the appellant (defendant).

*Peter J. Strassberger,* with whom, on the brief, was *Alan Spirer,* for the appellees (plaintiffs).

ARMENTANO, J. The plaintiffs are the remote purchasers of residential property located at fifty-seven Pheasant Run Road, Wilton, developed and sold by the defendant. The subsurface sewage disposal system[1] (hereinafter septic system) which was intended to service the five-bedroom house located on the property, was allegedly constructed by the defendant in 1972. It failed two and one-half years after its installation and three months after the plaintiffs took possession of the property which they purchased from the original buyers in 1974. The failure of the septic system to accommodate the sewage flowing into it resulted in effluent surfacing in the plaintiffs' back yard.[2] In *Coburn* v. *Lenox Homes, Inc.,* 173 Conn. 567, 378 A.2d 599 (1977), this court affirmed the dismissal of the plaintiffs' action against the defendant grounded on implied warranty, contract and express warranty because the plaintiffs lacked contractual privity with the defendant. Id., 570–73. We did not, however, view the lack of privity to be fatal to the plaintiffs' tort action. Id., 573–74; see *Morris* v. *Holt,* 380 Mass. 133, 136, 401 N.E.2d 851 (1980). Accordingly, we remanded the case for a trial on the merits of the negligence count. *Coburn* v. *Lenox Homes, Inc.,* supra, 574.

In this appeal the defendant challenges the propriety of the award of $16,390 damages to the plain-

---

[1] A " 'subsurface sewage disposal system' means a septic tank followed by leaching pits, trenches, beds or galleries." General Statutes § 20-341a (c).

[2] Effluent is the liquid remaining after the septic tank has operated to settle out household waste solids.

tiffs, representing the cost of designing and installing an effective replacement system, after a trial to the court during which the defendant called no witnesses. The defendant claims specifically that the court erred in (1) finding that the defendant had constructed the septic system; (2) ruling that the defendant owed the plaintiffs a duty of care; (3) admitting into evidence an uncertified copy of state regulations that provided the foundation for finding a breach of the standard of care established therein; (4) finding that the defendant breached the common law standard of care; (5) finding that the defendant's alleged negligence was the proximate cause of the plaintiffs' harm; and (6) finding that the plaintiffs' actions were not the proximate cause of the septic system failure.

Recovery of damages in negligence requires proof by a fair preponderance of the evidence that the actor owed a duty of care to the victim, which was breached by the actor's failure to meet the standard of care arising therefrom and that the breach was the proximate cause of actual harm suffered by the victim. See, e.g., *Hoelter* v. *Mohawk Service, Inc.,* 170 Conn. 495, 501–502, 365 A.2d 1064 (1976); *McDonough* v. *Whalen,* 365 Mass. 506, 514, 313 N.E.2d 435 (1974). See generally Prosser, Law of Torts (4th Ed.) pp. 143, 208; Wright & Fitzgerald, Conn. Law of Torts (2d Ed.) pp. 33–41.

Testimony at the trial established the following facts regarding the operation of a septic system: The purpose of a septic system is to convert waste material into liquid suitable for entry into ground water. Sewage is first collected in a septic tank where much of the solid waste settles. What remains after settling is liquid effluent which contains par-

ticles of solid waste. In the subject system, the
effluent was collected in galleries before entry into
the surrounding soil. A gallery, which is often part
of a septic system, is a large trench lined with blocks
or concrete and usually covered with a lid, which
controls the level of effluent entering into the sur-
rounding soil and makes way for the entry of fresh
effluent into the gallery. The trench is customarily
four feet wide and either two or four feet deep,
depending on anticipated use. The system con-
structed by the defendant was two feet deep. Efflu-
ent leaches out through perforations in the sides of
the gallery into surrounding soil, or leaching area,
unless the soil is saturated, as was the case here.

The design of a septic system depends principally
upon the type of soil into which the effluent leaches.
The soil's drainage character is important because
the effluent must interact with soil bacteria to
accomplish the final renovation of waste material
before its entry into area ground water. To provide
effluent with sufficient interaction with soil in the
leaching area, the septic system should not be con-
structed too near the ground water table or ledge
rock under the leaching area.[3]

I

The defendant first claims that there was no direct
evidence to support the allegation that it constructed
the septic system on the property or ever owned the
property which the plaintiffs later purchased. In its
memorandum of decision the trial court found that
the defendant had installed the system. Although
it is clear that an installer, a Mr. Francoletti,
actually installed the system, it is also clear

---

[3] Ledge rock is customarily defined as substance which a backhoe
cannot penetrate.

that the trial court used the term "installed" in a broader sense, to include the design and other aspects of septic system construction. The certified copy of a subdivision map filed July 3, 1969 in the town of Wilton, the town approval for a subsurface disposal system dated April 4, 1972, the application for permission to construct a sewage disposal system signed by the installer, and two town planning and zoning commission resolutions granting conditional approval to subdivide, all indicate that the defendant owned the subject lot. Moreover, the town planner testified that the defendant applied for permission to subdivide the property which includes the subject lot, and the town approval of the system lists the defendant as the builder of the system. The defendant offered no evidence to rebut this testimony or documentary evidence. We hold the record is sufficient to find that the defendant designed and constructed the septic system on the lot which it at one time owned. See *Coburn* v. *Lenox Homes, Inc.,* supra, 569.

## II

The defendant's second claim of error is that the plaintiffs did not prove at trial that the defendant owed them any duty of care as alleged in their complaint because they did not introduce into evidence the construction contract between the defendant and the original purchasers of the subdivision lot, James E. and Joyce D. Buenger. The defendant interprets the plaintiffs' complaint to allege a duty of care arising only from the construction contract between the Buengers and the defendant to which contract the plaintiffs are successors and assigns. We do not read the complaint so narrowly. A fair reading of the negligence count dis-

closes that in addition to the duty which allegedly arose from the construction contract, the plaintiffs alleged that the defendant owed a duty to the plaintiffs to construct the septic system in a good, substantial, workmanlike manner. Because the plaintiffs alleged a common law duty of care, the failure to introduce direct evidence of the existence of a contract between the defendant and the first purchasers is not fatal to the plaintiffs' recovery in negligence.

The existence of a duty of care is an essential element of negligence. E.g., *Frankovitch* v. *Burton,* 185 Conn. 14, 20, 440 A.2d 254 (1981). A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act. See *Coburn* v. *Lenox Homes, Inc.,* supra, 575-76; *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 12-13, 347 A.2d 102 (1974); *Connecticut Savings Bank of New Haven* v. *First National Bank & Trust Co. of New Haven,* 138 Conn. 298, 303-304, 84 A.2d 267 (1951); *Orlo* v. *Connecticut Co.,* 128 Conn. 231, 237, 21 A.2d 402 (1941). See generally Wright & Fitzgerald, supra, 33. When negligent construction is alleged the plaintiff must prove that the defendant knew or should have known of the circumstances that would foreseeably result in the harm suffered. See *Johnson* v. *Healey,* 176 Conn. 97, 103, 405 A.2d 54 (1978), aff'd on other grounds, 183 Conn. 514, 440 A.2d 765 (1981). "Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge." *Lippitt* v. *Ashley,* 89 Conn. 451, 464, 94 A. 995 (1915), quoting *Lowndes* v. *City*

*National Bank of South Norwalk,* 82 Conn. 8, 16, 72 A. 150 (1909); see, e.g., Prosser, supra, 157; Wright & Fitzgerald, supra, 41.

In finding all the issues for the plaintiffs the trial court ruled that the defendant owed a duty of care to the plaintiffs.[4] Although the court did not express the factual basis for this ruling, the testimony and documentary evidence introduced at trial disclosed that the defendant should have known that the septic system it designed and planned to have installed was likely to fail in the manner that occurred in the present case.

For the purpose of designing an effective septic system, the type of soil in the leaching area is determined by a percolation test which ascertains the rate of water seepage into a percolation test hole and by an examination of the color and texture of the soil. The building inspector for the town of Wilton testified that, at the defendant's request, one, or possibly two percolation tests were performed on the property on April 3, 1972 by an employee of his office. Informal town records of the test do not divulge where the hole was dug. The town record indicates that a seven foot deep hole disclosed no ground water, but does not indicate the percolation rate. The building inspector examined the system prior to June 27, 1972, the date on which it was covered, and observed 720 square feet of effective leaching area, which exceeded the 625 square feet required by the town for its approval of the septic system. This requirement was based on a type "A"

---

[4] We note that the defendant did not seek a further articulation of the basis for the trial court's findings as provided in Practice Book § 3082. *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222 n.5, 435 A.2d 24 (1980).

soil which has the fastest percolation rate. If the soil had had a slower percolation rate, the leaching area would have been too small to accommodate the effluent. The application for permission to construct or repair a sewage disposal system submitted to the town building inspector on August 25, 1972 indicated type "B" soil. The professional engineer who inspected the system on December 31, 1974 observed type "D" soil "at best" in each of three percolation test holes. On that date the town sanitarian observed type "D" in two test holes and type "E" in a third hole. These inspections in 1974 also revealed unusually and unacceptably high ground water and ledge rock levels in the leaching area.

The defendant claims to have had no notice of these subsurface soil, water and ledge rock conditions that would foreseeably result in the particular failure of the system that occurred in the present case. From a review of the transcript, we hold that the trial court could reasonably have found that the defendant should have known of these conditions. The town sanitarian testified that in late 1974 he observed vegetation above the leaching area of such a nature as to indicate a high ground water table, a condition which was likely to have existed in 1972. The Wilton town planner testified that the planning and zoning commission for the town of Wilton conditioned approval of the lot located at fifty-seven Pheasant Run Road upon the defendant's providing a report from an engineer stating that the soil was suitable for residential buildings. A commission resolution dated April 8, 1969 and another dated November 23, 1970 documented this testimony.

According to the town planner and the building inspector, no engineer's report was filed by the defendant.[5]

Finally, the leaching area surrounding the gallery consisted of some silt, which has a very slow percolation rate, and approximately 30 percent builder's fill. Builder's fill is rocks, scraps of wood and cable, and other refuse of a building site. Because such fill would not provide the necessary bacterial action on effluent inherent in soil, it is customarily not acceptable for a leaching field.

From the foregoing circumstances, the defendant should have known that the proposed leaching field had a percolation rate slower than type "A" soil, that the ground water table and ledge rock levels were unusually high, and that backfill existed in large quantity. Reliance upon the town's testing of the soil and approval of the septic system is relevant, but does not preclude the inference of negligence which may be drawn from actual or constructive notice of these substandard conditions. *Rodriquez* v. *Gilbertie*, 33 Conn. Sup. 582, 584, 363 A.2d 759 (1976). From notice of these substandard conditions, a duty to exercise due care arose.[6]

---

[5] Although the precise dimensions of the lot changed before it was sold, the town planner testified that the lot was located within approximately the same area as the original lot. Our comparison of the original subdivision map and the map prepared by the engineer who designed the replacement system discloses that most, if not all, of the septic system was located within the boundaries of the original lot.

We also note that more than 19 percent of the property consists of a pond.

[6] A duty to use care in designing a septic system under these circumstances is emphasized by expert testimony that until the failure of a septic system becomes manifest by poor drainage from the house, or the odor and substance of effluent rising to the land

## III

The defendant's third and fourth claims of error are each based upon an assertion that the plaintiffs failed to prove that the defendant breached its alleged duty of care by not meeting the appropriate standard of care. The defendant's third claim of error is that the plaintiffs failed to prove that the defendant violated the state health code because the trial court erroneously admitted into evidence, over the defendant's objections, a pamphlet purporting to include the code as effective in 1972. This code, as reproduced in the pamphlet published by the state department of health, provided the foundation for much, but not all, of the expert testimony relevant to the standard of care owed to the plaintiffs and the breach thereof.

General Statutes § 52-166 provides that "[a]ny order or regulation made by any state official in the performance of his duties may be proved in any court by a copy of such order or regulation certified by the person having the legal custody of the same." See generally *Roden* v. *Connecticut Co.*, 113 Conn. 408, 416, 155 A. 721 (1931). If this certification procedure is not utilized, then the party seeking admission of state regulations into evidence must authenticate them properly. *Webb* v. *Czyr Construction Co., Inc.*, 172 Conn. 88, 91, 374 A.2d 125 (1976). If neither of these procedures is complied with, the admitting court committed patent error, the harmfulness of which depends upon the factfinder's use of the evidence. See id., 91, 93.

surface, the failure is not discoverable absent a subsurface inspection of the system. Even a thorough surface inspection of the system will not reveal the system's failure to function effectively until the failure becomes symptomatic.

In *Webb* v. *Czyr Construction Co., Inc.,* supra, this court considered the admissibility of an uncertified pamphlet containing sections of the state regulations pertaining to the proper design and installation of septic systems. In seeking the admission of a similar pamphlet upon the testimony of a professional engineer who was not employed by the state department of health, the plaintiffs in the present case did no more to authenticate the regulations than did the plaintiffs in *Webb* who sought to introduce a pamphlet upon the testimony of a town sanitarian. *Webb* v. *Czyr Construction Co., Inc.,* supra, 91. Therefore, the trial court erred in admitting the pamphlet.

Unlike the circumstances in *Webb*, however, where the trial court had instructed a jury that violations of the code would constitute negligence per se, the trial court's use of the purported code in the present case was not harmful. In this nonjury trial, the court did not base its holding upon negligence per se,[7] but upon common law negligence. Nothing in the memorandum of decision suggests that the court used the purported code to establish the standard of care owed by the defendant to the plaintiffs. Accordingly, the erroneous admission into evidence

---

[7] "Negligence per se operates to engraft a particular legislative standard onto the general standard of care imposed by traditional tort law principles, i.e., that standard of care to which an ordinarily prudent person would conform his conduct. To establish negligence, the jury in a negligence per se case need not decide whether the defendant acted as an ordinarily prudent person would have acted under the circumstances. They merely decide whether the relevant statute or regulation has been violated. If it has, the defendant was negligent as a matter of law. See Prosser, Law of Torts § 36." *Wendland* v. *Ridgefield Construction Services, Inc.,* 184 Conn. 173, 178, 439 A.2d 954 (1981); see *Panaroni* v. *Johnson,* 158 Conn. 92, 101, 256 A.2d 246 (1969); *Monroe* v. *Hartford Street Ry. Co.,* 76 Conn. 201, 207, 56 A. 498 (1903).

of an uncertified and unauthenticated copy of purported state regulations was not reversible error. See, e.g., *Anonymous* v. *Norton,* 168 Conn. 421, 429–30, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975).

The defendant's fourth claim of error is that the plaintiffs introduced no testimony regarding the common law standard of care which a skilled builder would have exercised under the circumstances and, hence, the plaintiff did not prove that the defendant failed to meet that standard of care. A builder is under "a duty to exercise that degree of care which a skilled builder of ordinary prudence would have exercised under the same or similar conditions." *Coburn* v. *Lenox Homes, Inc.,* supra, 574; *Scribner* v. *O'Brien, Inc.,* 169 Conn. 389, 400, 363 A.2d 160 (1975); see *Monroe* v. *Hartford Street Ry. Co.,* 76 Conn. 201, 206, 56 A. 498 (1903). Evidence of custom in the trade may be admitted on the issue of the standard of care, but is not conclusive. *Southern New England Telephone Co.* v. *D'Addario Construction Co.,* 33 Conn. Sup. 596, 598, 363 A.2d 766 (1976); *Rodriquez* v. *Gilbertie,* supra, 584; Wright & Fitzgerald, supra, 35.

In determining whether the defendant met the appropriate standard of care, the trial court found it significant that the septic system failed after an uncommonly brief period of use. The professional engineer who designed the replacement system, and the sanitarian for the town of Wilton both testified that the normal life expectancy of a system was fifteen to twenty years at the time of trial as well as in 1972. The town sanitarian also testified that a published study on the longevity of septic systems in Connecticut concluded that within five years of

installation half of all systems would fail. Both experts, however, testified that it was not normal for a system to fail after only two to three years of use.

In addition to this testimony, evidence that the defendant constructed the septic system after only one or two soil percolation tests were conducted supports the trial court's implicit conclusion that the defendant failed to exercise the care that a skilled builder of ordinary prudence would have exercised under the circumstances, which included notice of limiting subsurface soil, ground water and ledge rock conditions.

There was testimony at trial that a skilled builder exercising due care should design a system to accommodate the highest seasonal ground water table as determined by percolation tests conducted over a period of time. A backhoe must be utilized to determine the level of ledge rock in various locations under the proposed leaching field. The use of builder's fill in the leaching field is totally unacceptable because it is contrary to the fundamental principles of septic system operation.

The foregoing circumstances, which do not include the multiple code violations testified to at trial, amply support the trial court's conclusion that the defendant breached its duty of care.

## IV

The defendant's fifth claim of error is that the plaintiffs failed to prove that the alleged negligence of the defendant was the sole proximate cause of their injury. The defendant particularly claims that the plaintiffs' contributory negligence in operating

a garbage disposal and water softener was the sole proximate cause of the system's failure.[8]

More than one proximate cause may result in any harm suffered. E.g., *Albert* v. *Lee Circle, Inc.,* 162 Conn. 124, 128, 291 A.2d 735 (1971); *Magarian* v. *Bessoni,* 160 Conn. 442, 445, 280 A.2d 357 (1971). An actual cause that is a substantial factor in the resulting harm is a proximate cause of that harm. E.g., *Ferndale Dairy, Inc.* v. *Geiger,* 167 Conn. 533, 538, 356 A.2d 91 (1975); *Magarian* v. *Bessoni,* supra, 445; *Mahoney* v. *Beatman,* 110 Conn. 184, 195, 147 A. 762 (1929). Proximate cause results from a sequence of events unbroken by a superseding cause, so that its causal viability continued until the moment of injury or at least until the advent of the immediate injurious force. See *Ferndale Dairy, Inc.* v. *Geiger,* supra, 538; *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 18, 347 A.2d 102 (1974); *Connecticut Savings Bank of New Haven* v. *First National Bank & Trust of New Haven,* 138 Conn. 298, 304, 84 A.2d 267 (1951); *Howard* v. *Redden,* 93 Conn. 604, 611–12, 107 A. 509 (1919). A superseding cause may be found from the contributory negligence of the victim; *Hoelter* v. *Mohawk Service, Inc.,* supra, 502; if such negligence is greater than the combined negligence of those against whom recovery is sought. See General Statutes § 52-572h (a). Contributory negligence which is not a superseding cause results in the diminution of damages recovered. Id.[9]

---

[8] The defendant also claims that the intervening owners' act of accepting the septic system, as installed by an independent contractor, was the proximate cause of the injury. E.g., *Howard* v. *Redden,* 93 Conn. 604, 612, 107 A. 509 (1919). Because this defense was not pleaded it arises for the first time on appeal, and we decline to address it. Practice Book § 3063.

[9] General Statutes § 52-572h (a) provides: "In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover

Proximate cause is ordinarily a question of fact. E.g., *Ferndale Dairy, Inc.* v. *Geiger,* supra, 538; *Merhi* v. *Becker,* 164 Conn. 516, 521, 325 A.2d 270 (1973); *Monroe* v. *Hartford Street Ry. Co.,* supra, 208. The test for finding proximate cause "is whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." *Merhi* v. *Becker,* supra, 521; see *Palsgraf* v. *Long Island R. Co.,* 248 N.Y. 339, 350, 354, 162 N.E. 99 (1928) (Andrews, J., dissenting). The foreseeable risk may include the acts of the plaintiff and of third parties. *Merhi* v. *Becker,* supra, 522.

The risk created by the defendant's breach of its duty of care was that the septic system would prematurely fail due to the inadequacy of the leaching fields to accommodate a normal production of effluent. Effluent surfaced from the system because the leaching field was not able to absorb it. A letter dated April 1, 1975 from a sanitary engineer in the environmental health services division of the state department of health to the director of health of the town of Wilton stated: "It appears the existing system failed due to problems of high seasonal ground water and a system installed in soil displaying poor seepage characteristics with shallow depths to bedrock." That this system failed prematurely was established previously with respect to our discussion of the defendant's breach of its duty of care.

The defendant claims that the sole proximate cause of the septic system's premature failure was

damages resulting from injury to persons or damage to property, if such negligence was not greater than the combined negligence of the person or persons against whom recovery is sought, but any damages allowed shall be diminished in the proportion of the percentage of negligence attributable to the person recovering."

the plaintiffs' and the Buengers' use of a water softener and a garbage disposal. When the plaintiffs purchased the residential property, the house was equipped with a water softener and a garbage disposal unit. No evidence was introduced from which the court could determine who installed these devices.

Expert testimony established that use of a water softener, other than a passive filter type, increases the flow of water into a septic system by approximately twenty gallons per day and that the softening chemicals discharged with the water possibly may inhibit the soil's bacterial action, and hence the effective operation of the septic system. Use of a garbage disposal may decrease the life of a septic system that is not designed to accommodate one because of the unusually high level of solids in the waste water.

The basis for the trial court's finding for the plaintiffs on the issue of contributory negligence was not articulated in the memorandum of decision. Even if the court had ruled that the plaintiffs had sufficient notice that use of these devices would shorten the life of the septic system to give rise to a duty of care, the court could not reasonably have found that the acts of the plaintiffs and of the Buengers were a proximate cause of the failure on the basis of the facts presented.

An operational study conducted by the professional engineer who designed the replacement system determined that the plaintiffs' family introduced approximately 510 gallons of sewage per day into the septic tank, excluding use of the disposal which the plaintiffs removed upon taking possession of the house. Assuming that the water softener accounted

for twenty of the 510 gallons per day, its use contributed only approximately 4 percent of the total sewage. The trial court had no evidence from which to determine the extent of the Buengers' use of either device.

Given the uncertainty of the scant testimony regarding the causal connection between use of a water softener and a garbage disposal and the failure of a septic system after only a relatively short period of use, the trial court reasonably found that the defendant's negligence was the sole proximate cause of the harm suffered by the plaintiffs.

"On appeal, it is the function of this court to determine whether the decision of the trial court is clearly erroneous. See Practice Book, 1978, § 3060D. This involves a two-part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, [the finding of] those facts [is] clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go." (Footnote omitted.) *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

There is no error.

In this opinion the other judges concurred.