## BRIAN F. EDWARDS ET AL. *v.* CODE ENFORCEMENT COMMITTEE OF THE TOWN OF VERNON
### (5386)

DUPONT, C. J., SPALLONE and BIELUCH, Js.

Submitted on briefs September 1—decision released December 15, 1987

*Jose R. Ramirez* filed a brief for the appellants (plaintiffs).

*Mitchel E. Kallet,* town attorney, filed a brief for the appellee (defendant).

BIELUCH, J. The plaintiffs, Brian F. Edwards and First Edwards Realty Corporation,[1] have appealed from the dismissal of their administrative appeal on motion of the defendant for failure to make service in accordance with General Statutes § 52-57.[2] We find no error.

The plaintiffs are owners of real estate at various locations in the town of Vernon. Under the terms of the town housing ordinance; Ordinance No. 105, as amended by Ordinance No. 139; they were cited by the housing code inspector for alleged code violations on their properties. Pursuant to the provisions of the ordinance, an appeal was taken to the code enforcement

---

[1] The plaintiffs filed their appeal under the designation "Brian F. Edwards and/or First Edwards Realty Corp." Although this issue has not been raised or discussed by the defendant or the trial court, we question the use of the conjunctive-disjunctive form "and/or" in identifying the plaintiffs. The Appellate Division of our former Circuit Court "deplore[d] the use of the conjunctive-disjunctive form 'and/or' in the pleadings because the fractional expression is an equivocal connective, being neither positively conjunctive nor positively disjunctive." *State* v. *Anonymous (1971–15),* 6 Conn. Cir. Ct. 549, 550 n.2, 278 A.2d 827 (1971); see also *Mack* v. *Perzanowski,* 172 Conn. 310, 314–15, 374 A.2d 236 (1977).

It is axiomatic that the parties to an action must be identified with certainty. A sales tax levy directed to several persons whose names were separated by the expression "and/or" was too indefinite to be capable of enforcement. *Saylor* v. *Williams,* 93 Ga. App. 643, 645, 92 S.E.2d 565 (1956). "In *Varnell* v. *Speer,* 55 Ga. 132 [133 (1875)], it is held: 'When the parties are not set out with sufficient certainty to ascertain who are the defendants to a suit, no valid judgment can be rendered against any one.' " *Saylor* v. *Williams,* supra.

[2] General Statutes § 52-57 (b), as relevant here, provides: "Process in civil actions against the following-described classes of defendants shall be served as follows: (1) Against a town, upon its clerk, assistant clerk, manager or one of its selectmen."

committee, which confirmed the inspector's findings and ordered that the violations be corrected. Claiming to be aggrieved by this decision because they will be compelled to make property repairs and improvements, or else face criminal sanctions, the plaintiffs appealed to the trial court expressly "[p]ursuant to Section 4-183, Connecticut General Statutes." Service of the petition was directed to be made upon the agency through its chairman or clerk.[3] The return of service recited that "the petition for judicial review pursuant to § 4-183" was served upon the chairman of the code enforcement committee.

The defendant filed a motion to dismiss the appeal due to the insufficiency of service of process, alleging that since service was made upon the chairman of the agency, it was not made pursuant to General Statutes § 52-57, which requires that process in a civil action against a town must be served upon one of its specified officials. The motion to dismiss the appeal was granted without a written memorandum of decision. The sole issue on appeal is whether the trial court erred in finding that the defendant was not an "agency" within the meaning of § 4-183 (b) of the Uniform Administrative Procedure Act (UAPA) for purposes of judicial review of its actions.

The UAPA, General Statutes §§ 4-166 through 4-189, applies only to state agencies by virtue of § 4-166 (1).[4]

---

[3] General Statutes § 4-183 (b), as relevant here, provides: "Copies of the petition shall be served upon the agency and all parties of record . . . except that service upon an agency may be made by the appellant mailing a copy of the petition by registered or certified mail, postage prepaid, without the use of a sheriff or other officer, to the office of the commissioner of the agency or to the office of the attorney general in Hartford."

[4] General Statutes § 4-166 (1) defines the term "agency" as used in the UAPA to mean "each state board, commission, department or officer, other than the legislature, courts, judicial review council, council on probate judicial conduct, governor, lieutenant governor, attorney general or town or regional boards of education, authorized by law to make regulations or to determine contested cases . . . ."

The plaintiffs maintain that the defendant is a state agency because the town housing code; Ordinance No. 105, as amended by Ordinance No. 139; gives it responsibility for enforcing certain provisions of the State Tenement House Act; General Statutes §§ 19a-356 through 19a-365; the State Building Code; General Statutes §§ 29-251 through 29-282; the State Fire Safety Code; General Statutes §§ 29-291 through 29-370; and the Landlord and Tenant Act. General Statutes §§ 47a-1 through 47a-20a. In addition, they claim that Ordinance No. 122 designates the housing code inspector, whose actions are reviewed by the defendant, "as another authority to exercise concurrent jurisdiction with the Board of Health to enforce the provisions of [General Statutes §§ 47a-50 through 47a-61] within the Town of Vernon."

It is the claim of the plaintiffs that notwithstanding that the defendant is appointed by the town's mayor with the approval of a majority of the town council, it is a state agency within the purview of the UAPA by virtue of its powers and responsibilities under the specified general statutes. Quoting *Catholic Family & Community Services* v. *CHRO,* 3 Conn. App. 464, 467, 489 A.2d 408 (1985), the plaintiffs maintain that the defendant is a state agency because it " 'is a body in which the legislature has reposed general powers of administration of a particular state program in connection with which it has been given statutory authority to act for the state in the implementation of that program.' "

The plaintiffs' rationale for proceeding under the UAPA is further expressed as follows: "As plaintiff[s] knew that the Legislature had deleted from Section 4-183 (b), via Public Act 79-163,[5] the requirement that

[5] Public Acts 1979, No. 79-163, entitled "An Act Concerning Service of Process in Administrative Appeals," provides: "Subsection (b) of section 4-183 of the general statutes is repealed and the following is substituted in lieu thereof:

service of process in administrative appeals be carried out in accordance with the provisions for service of process in civil actions, and had substituted therefor the existing provision which clearly mandates service upon the agency, [they] sought to advise the agency that its actions, as opposed to any action by the Town, [were] being appealed." The plaintiffs also seek to distinguish their appeal from a civil action against the town by relying upon § 36 of Ordinance No. 139, which provides: "Any person aggrieved by a decision of the Housing Code Inspector may seek relief therefrom in any court of competent jurisdiction in accordance with the general provisions of the Statutes relating to appeals from municipal commissions, boards and committees."

The defendant maintains that it is a town agency enforcing the local housing code in the exercise of the town's police power, and, therefore, it is not a state agency within the provisions of the UAPA.

The housing code in question is contained in Ordinance No. 105, as amended by Ordinance No. 139. Its designated purpose is to regulate supplied facilities, maintenance and occupancy of dwellings, dwelling units, rooming houses and rooming units. The "Scope"

---

"(b) Proceedings for such appeal shall be instituted by filing a petition in superior court for the judicial district of Hartford-New Britain or for the judicial district wherein the aggrieved person resides or if such person is not a resident of this state to the court for the judicial district of Hartford-New Britain within [thirty] FORTY-FIVE days after mailing of the notice of the final decision of the agency or, if a rehearing is requested, within [thirty] FORTY-FIVE days after the decision thereon. Copies of the petition shall be served upon the agency and all parties of record [in the same manner as process is served in civil actions] WITHIN THIRTY DAYS AFTER MAILING OF SUCH NOTICE OR, IF A REHEARING IS REQUESTED, THIRTY DAYS AFTER THE DECISION THEREON, EXCEPT THAT SERVICE UPON AN AGENCY MAY BE MADE BY MAILING A COPY OF THE PETITION BY REGISTERED OR CERTIFIED MAIL, POSTAGE PREPAID, TO THE OFFICE OF THE COMMISSIONER OF THE AGENCY OR TO THE OFFICE OF THE ATTORNEY GENERAL IN HARTFORD."

of this code is contained in the introductory statement, which provides: "The provisions of this ordinance shall apply uniformly to the construction, maintenance, use and occupancy of any structure or building containing a dwelling unit where applicable, and shall apply uniformly to the alteration, repair, equipment, use, occupancy, and maintenance of any existing building or structure containing a dwelling unit within the jurisdiction of the Town of Vernon irrespective of when or under what code or codes such buildings or structures were originally constructed or rehabilitated. The provisions of the Housing Code are supplemented in some instances by the State Tenement House Act, [General Statutes §§ 19a-356 through 19a-365]; The State Basic Building Code, [General Statutes §§ 29-251 through 29-282]; the State Fire Safety Code, [General Statutes §§ 29-291 through 29-370]; and the Landlord and Tenant Act, [General Statutes §§ 47a-1 through 47a-61]." The housing code inspector administers and enforces this housing code. Appeals from his actions may be taken to the code enforcement committee, which consists of the building board of appeals. Chapter VIII, § 4, of the town charter provides for the appointment of this board by the mayor with the approval of a majority of the town council.

The plaintiffs construe the "Scope" of the housing code as incorporating the cited statutes into the housing code, thereby converting the defendant into a state agency enforcing state laws. They apply the same legal analysis to Ordinance No. 122, which designates the housing code inspector as another authority to exercise concurrent jurisdiction with the board of health to enforce the provisions of General Statutes §§ 47a-50 through 47a-61.

The issue raised by the plaintiffs calls for a review of the relationship between the municipal ordinances and state statutes on common subjects of building regu-

lations and public health and safety within municipal territorial limits. General Statutes § 7-148 (c) provides: "Any municipality shall have the power to do any of the following, in addition to all powers granted to municipalities under the constitution and general statutes . . . (7) REGULATORY AND POLICE POWERS. (A) BUILDINGS. (i) Make rules relating to the maintenance of safe and sanitary housing; (ii) Regulate the mode of using any buildings when such regulations seem expedient for the purpose of promoting the safety, health, morals and general welfare of the inhabitants of the municipality . . . (vii) Regulate plumbing and house drainage; (viii) Prohibit or regulate the construction of dwellings, apartments, boarding houses . . . in such municipality unless the sewerage facilities have been approved by the authorized officials of the municipality . . . (H) PUBLIC HEALTH AND SAFETY. . . . (xiii) Make and enforce police, sanitary or other similar regulations and protect or promote the peace, safety, good government and welfare of the municipality and its inhabitants . . . ." The Vernon housing code, Ordinance No. 105, as amended by Ordinance No. 139, was enacted by the local government under the authority of § 7-148 delegating these powers to the towns.

By virtue of this legislative delegation of general police powers to local officials and agencies, their enforcement has been made a local function and duty. That the scope or reach of the local housing ordinance may be extended or fine-tuned by its introductory statement that "[t]he provisions of the Housing Code are supplemented in some instances by the State Tenement House Act . . . the State Basic Building Code . . . the State Fire Safety Code . . . and the Landlord and Tenant Act," does not convert the enforcement of the housing code by the housing code inspector or the defendant code enforcement committee into a state function and duty, thereby transforming the defend-

ant into a state agency under the UAPA. All of the statutes cited in this housing ordinance, as well as General Statutes §§ 47a-50 through 47a-61, cited in Ordinance No. 122, contain detailed provisions related to the municipal powers exercised in the local housing code. The defendant agency does not obtain any of its powers and duties from them. They merely set a state standard for the uniform enforcement of the municipal powers pertaining to the regulation of the police, building and public health and safety functions of municipal government by agencies other than the defendant. As supplements to the housing ordinance, they fill any unexpressed void that may exist in the local code. The term "supplement" means "to fill up or supply by additions, add something to, fill the deficiencies of." Webster, Third New International Dictionary. Even without such a statement in the ordinances, all pertinent state statutes would apply by the doctrine of preemption.

General Statutes §§ 19a-356 through 19a-365 constitutes the State Tenement House Act. Its provisions apply to all cities, boroughs and towns. General Statutes § 19a-356. Its technical physical requirements; §§ 19a-357 through 19a-361; are enforced by local building inspectors, fire marshals or other persons authorized to issue building permits. General Statutes § 19a-364. That its provisions are supplementary to local housing codes is manifest in General Statutes § 19a-363, which provides: "Nothing in this part shall be construed to abrogate or impair the powers of a local department of health, the fire department or the courts or any other lawful authority to enforce any provision of any city charter or building ordinance or regulation not inconsistent with this part or to prevent or punish for violations thereof." The defendant code enforcement committee has no function or duty to perform under the State Tenement House Act.

The State Building Code, General Statutes §§ 29-251 through 29-282, constitutes the building code for all towns, cities and boroughs. General Statutes § 29-253. This code is administered locally by building officials appointed by the chief executive officer. General Statutes § 29-260. While its provisions reach all building construction and renovations throughout the state, the defendant has no function or duty to perform under its provisions.

The same conclusion is reached as to the State Fire Safety Code, General Statutes §§ 29-291 through 29-370. Its provisions are administered in towns, cities and boroughs by locally appointed fire marshals. General Statutes § 29-297. The provisions of the fire safety code do not relate to the functions and duties of the defendant Code Enforcement Committee.

The Landlord and Tenant Act is contained in General Statutes §§ 47a-1 through 47a-20a. Its title, "Rights and Responsibilities of Landlord and Tenant," is self-definitive. The act in no way affects the defendant agency. Its relationship to the housing code is found in §§ 47a-7 and 47a-11. These provisions, however, require landlords and tenants to comply with local housing codes, and do not extend their responsibilities to a local code enforcement committee, such as the defendant. Section 47a-7 (a) provides that "[a] landlord shall: (1) Comply with the requirements of [the Tenement House Act] and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof . . . . " Section 47a-11 similarly provides that "[a] tenant shall: (a) Comply with all obligations primarily imposed upon tenants by applicable provisions of any building, housing or fire code materially affecting health and safety . . . . "

The plaintiffs maintain that Ordinance No. 122 also clothes the defendant with the mantle of a state agency because it is a part of the "apparatus" for the enforcement of a state statute. They claim a tie-in is made in the provision of Ordinance No. 122 "pursuant to [§ 47a-55] of the General Statutes that the Housing Code Inspector, as defined in Section 1.21 of the Town of Vernon Housing Code, is hereby designated as another authority to exercise concurrent jurisdiction with the Board of Health to enforce the provisions of [General Statutes §§ 47a-50 through 47a-61] within the Town of Vernon." Those sections are entitled "Public Enforcement of Health Safety Standards in Tenement and Boarding Houses and in Rented Dwellings." Section 47a-55 authorizes local boards of health to enforce the chapter. It also permits local governments to "designate another authority or authorities to exercise concurrent or exclusive jurisdiction in the enforcement of this part." The enforcement provisions of the act are found in §§ 47a-58 through 47a-61. Section 47a-58 provides for enforcement by civil penalty and injunctive relief. Civil penalties are recovered in an action brought to the superior court, subject to specified defenses. General Statutes § 47a-59. The defendant Code Enforcement Committee does not enter into any phase of the enforcement of this legislation.

We conclude, therefore, that the statutes cited in the local ordinance have no bearing on the status of the defendant agency, and do not transform it into a state agency subject to the UAPA. The situation before us is not that found in *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 372–73, 355 A.2d 265 (1974), where the Supreme Court held that since local boards of education serve as agents of the state in their communities in furnishing education for the general public, thereby performing a state function and duty required by article eighth, § 1, of the Connecticut con-

stitution and implemented by legislative enactments, they are "state boards" within the meaning of General Statutes § 4-166 (1) of the UAPA.[6] See *Lee* v. *Board of Education,* 181 Conn. 69, 74–76, 434 A.2d 333 (1980); *Adamchek* v. *Board of Education,* 174 Conn. 366, 368–69, 387 A.2d 556 (1978).

The second claim of the plaintiffs that the legislature deleted from § 4-183 (b), via Public Acts 1979, No. 79-163, the requirement that service of process in administrative appeals be carried out in accordance with the provisions for service of process in civil actions, falls with our conclusion that the defendant agency does not come within the meaning of state "agency" under the provisions of § 4-166 (1) of the UAPA. We need not, therefore, review that claim. Suffice it to say that General Statutes § 51-197b (a) authorizes administrative appeals to the Superior Court "from administrative decisions of officers, boards, commissions or agencies of the state or any political subdivision thereof . . . ." To appeals taken under this provision, the specific requirements, conditions and limitations of the UAPA apply to state agencies only. See Ordinance No. 139, § 36.

There is no error.

In this opinion the other judges concurred.

---

[6] After *Murphy* v. *Berlin Board of Education,* 167 Conn. 368, 355 A.2d 265 (1974), the legislature amended General Statutes § 4-166 (1) by adding to its exclusions from the definition of "agency" any "town or regional board of education." See Public Acts 1975, No. 75-529, § 2.