[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
The defendants have filed a motion for summary judgment. The case involves a claim for injuries as the result of a fall by the plaintiff the morning of January 23, 1992 in Glastonbury, Connecticut. At the time of the accident a freezing rain was falling. The plaintiff admits this to be the case and weather records support the admission. The statement of another individual and comments by a police officer in his accident report also state that a freezing rain storm began the morning of January 23d.
In a request to admit the plaintiff stated that he had no memory of whether there was ice or snow on the sidewalk or the surrounding ground prior to the beginning of the ice storm which was in progress at the time of the accident. An affidavit by a Steven Sziklas, the property manager for these premises, states that he visited the property the day before the accident and observed no ice or snow.
The plaintiff does not appear to contest the claim that an ice storm was in progress at the time of the fall. CT Page 1195 He relies on a statement from the same Mr. Sziklas in response to interrogatories. In the response Mr. Sziklas and that although the defendant Connecticut Mutual Life contracted out snow and ice removal to a contractor on occasion an employee of the co-defendant Servus Management spot sanded "an area." The plaintiff also refers to a statement by this same individual in which he implies that generally the defendants have sand spread on the premises regardless of whether a storm was in progress. The plaintiff also attached to their memorandum a report from the weather records at Bradley International Airport that precipitation was recorded on January 21, 1993, the temperatures rose above freezing during the day of January 22d but dropped below freezing at 6 p. m. on the 22d.
It is difficult for the court to decipher these records but assuming "T" stands for trace amounts it appears there were trace amounts of precipitation during the day of January 21st and the trace amounts occurred between 8 a.m. and 11 a.m. in the morning of that day. No precipitation occurred on January 22d so this would mean that the last precipitation occurred approximately 41 hours prior to the commencement of the ice storm of January 23d during which the plaintiff fell (see weather record of January 23, 1992).
Summary judgment may be used to resolve litigation when there is no genuine issue of material fact and where the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case, Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 578 (1990). The test for granting such a motion is whether a trial court would grant a directed verdict on the same evidence, Batick v. Seymour,186 Conn. 632, 647 (1982). Of course, the burden is on the party seeking summary judgment to show the non-existence of any material fact and the burden has been defined as a "strict" one, Strada v. Conn. Newspapers Inc., 193 Conn. 313,317 (1984), D.H.R. Construction Co. v. Donnelly,180 Conn. 430, 434 (1980).
The law is clear in our state that a property owner in the absence of unusual circumstances may await the end of a freezing rain or sleet storm and a reasonable time thereafter before removing ice and snow from outside walks CT Page 1196 and steps, Kraus v. Newton, 211 Conn. 191, 197 (1989).
The plaintiff does not question the holding of this case and there is no factual dispute that the plaintiff fell while an ice storm was in progress.
The plaintiff seeks to avoid the application of Kraus
by claiming a material fact is in issue here concerning whether the plaintiff fell on so-called "old ice", Kraus v.Newton, id. at page 198. That is, if the plaintiff falls on ice that accumulated on the property prior to the ice storm during which the plaintiff actually fell then Kraus
does not operate to bar recovery. This has to be the case since Kraus only aimed to relieve property owners of protecting people against ice actually gathering during a storm in progress — practically there would be no way of removing the ice or its danger in such a situation. Also a property owner is even given a reasonable time after the storm to take action since such storms can come at any time of night or day and even though they may last a short time, in that time, they could create dangerous conditions. When so-called old ice is involved these considerations in most cases would not apply.
The assertion that there exists a material issue as to the existence of ice accumulation on the premises prior to this ice storm and whether the plaintiff might have fallen on such "old Ice" is purely speculative. Mr. Sziklas affirmatively denies such ice was present. The plaintiff says he doesn't remember. The only "evidence" presented to the court is that some forty hours before the accident trace amounts of precipitation fell. The temperature then rose above freezing and then went below freezing. From all of this in the face of Sziklas' affidavit and the plaintiff's admission the court is asked to conclude there may have been a layer of ice at the spot the plaintiff fell from trace precipitation that fell over a day and a half before. In his brief the plaintiff identifies the weather records he's introduced to show this "precipitation" of January 21st were from "Bradley International Airport" apparently this is where the information is gathered although some of the courts refer to the "Hartford station." Although the court is not resting its decision on this basis, it is also true that these traces of precipitation fell at a location several miles from the CT Page 1197 site of the fall in Glastonbury.
The plaintiff's speculation that old ice was on the premises from the January 21st storm under the circumstances of this case is little more than a conclusory and bald statement of fact with insufficient evidentiary basis to afford the court a reason to deny the motion for summary judgment.
The plaintiff also makes the claim that even if the defendants were not required to remove ice and snow before the end of the storm under Kraus, since they had done so in the past, they had assumed a duty to do so. This he argues should form an exception to Kraus and the plaintiff citesCoburn v. Lenox Homes Inc., 186 Conn. 370. That case at page 375 said: "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of a general nature of that suffered was likely to result from his act or failure to act."
This conclusory language is not of much help to the plaintiff. Coburn only discusses the sources a court goes to in order to establish a standard of care; Kraus has already established the appropriate standard of care in this area. It would certainly lead to a counter-productive result and be bad social policy if courts held that parties who went beyond standards of care explicitly required by the law would be liable to parties injured not because of the mandated standard of care but by reason of the higher standard of care adopted by a particular defendant. People would be punished for exercising more care and making premises safer than the law required. There might be some substance to the plaintiff's position if he claimed he somehow relied on the defendants prior actions in removing ice or sanding while a storm was in progress and that induced reliance led to his accident, see Catania v. InterCommunity Mental Health Group Inc., 7 CSCR 510 (1992) and its reference to reliance factor in defining standard of care at page 511. There is no such claim here however and the facts don't appear to be such that a reliance theory could be formulated.
In any event the court has granted the motion for summary judgment previously and through this memorandum of decision sets forth its reasoning.
Corradino, J. CT Page 1198