[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION AFTER TRIAL
Through this subrogation action, the plaintiff Liberty Mutual Insurance Company (Liberty) claims that due to the negligent performance of roofing services at the residence of its insured, June Harrington, it was CT Page 14954 required to pay her benefits of $1,367.40, less a $250.00 deductible. The complaint dated May 2, 1997 alleges that this amount represents homeowner's insurance benefits due to Harrington as compensation for the losses she sustained as the result of inadequate work performed by the defendant construction company in 1995 under the direction of its principal, Joseph Grillo. Liberty alleges that it is thus legally entitled to obtain reimbursement of $1117.40. from the defendant Carpentry Unlimited. Through its Answer dated August 21, 1998, the defendant has admitted that, as alleged in the complaint, it was a business entity in Connecticut during the time in question, and has further admitted that it performed roofing work on Harrington's residential property. The defendant has either denied each of the remaining allegations of the complaint, or left the plaintiff to its proof.
This case was consolidated for trial with Harrington v. Joseph Grillod/b/a Carpentry Unlimited, Docket No. CV98-0579272, an action presenting breach of contract and fraud claims brought by Harrington to recover damages caused by the defendant's performance of of the roofing services at issue.[1] Both cases, and thus the claims of all three plaintiffs, were tried to the court on June 9 and June 29, 2000. All parties were represented by skilled and experienced trial counsel, who elected to submit written briefs in lieu of oral argument. Those briefs, which contained thorough and detailed attention to the varied and significant legal and evidentiary issues presented in these trials, were received by the court under date of July 28, 2000.
After due consideration of the issues presented through the totality of the evidence, including the testimony of the multiple witnesses and the submission of the numerous exhibits which included technical information, and having reflected upon the parties' written legal arguments, the court finds the operative issues in favor of the plaintiffs in both actions. Accordingly, the court here awards fair, just and reasonable damages to the plaintiff Liberty Mutual Insurance Co.
For efficiency, the court references and incorporates herein the findings of fact set forth in Part II of the Memorandum of Decision after Trial issued in the companion matter, Docket No. CV98-0579272. These findings set forth the circumstances relevant to Harrington's underlying claim against the named defendant, identified in the companion matter as Joseph Grillo d/b/a Construction Unlimited.[2]
 I. LEGAL BASIS FOR DECISION
As Liberty has alleged negligent performance of roofing work by the defendant construction company as the basis for its action against Construction Unlimited, the court must apply the fundamental principles CT Page 14955 of negligence law to the facts established by the evidence in this matter. "The elements in a negligence cause of action are duty, breach of that duty, causation and damages. Doe v. Manheimer, 212 Conn. 748, 755,563 A.2d 699 (1989), overruled in part on other grounds, Stewart v.Federated Dept. Stores, Inc., 234 Conn. 597, 608, 662 A.2d 753 (1995)." (Footnote omitted.) Medcalf v. Washington Heights Condominium Assn.,57 Conn. App. 12, 16, ___ A.2d ___ (2000). "A duty to use care may arise from a contract, from a statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." Coburn v. Lenox Homes, Inc.,186 Conn. 370, 375, 441 A.2d 620 (1982). What duty the defendant had, if any, is a question of law. Nolan v. New York, N.H.H.R. Co.,53 Conn. 461, 471, 4 A. 106 (1885)." Bennett v. Connecticut Hospice,Inc., 56 Conn. App. 134, 137, 741 A.2d 349 (1999). Thus, in Connecticut, a party may be liable in negligence for the breach of a duty that arises out of a contractual relationship, such as that which existed in this case between Harrington and the defendant. See Johnson v. Flammia,169 Conn. 491, 496, 363 A.2d 1048 (1975), cited in Pagano v. Maniscalco,
Superior Court, Docket No. CV92-040975S, judicial district of Ansonia/Milford at Milford (Jun. 2, 1994, Curran, J.) (construing implications of negligent performance of a residential roofing contract).
In Coburn v. Lenox Homes, supra, a somewhat similar matter, the court considered the defendant contractor's claim that the plaintiff had erred in failing to introduce "testimony regarding the common law standard of care which a skilled builder would have exercised under the circumstances . . ." Coburn v. Lenox Homes, supra, 186 Conn. 381. The court opined that "[w]hen negligent construction is alleged the plaintiff must prove that the defendant knew or should have known of the circumstances that would foreseeably result in the harm suffered." (Citations omitted.) Id., 375. Thus, the plaintiff in the present action bears the burden of proving a of the "duty to exercise that degree of care which a skilled builder of ordinary prudence would have exercised under the same or similar conditions." Id., 574. See also Scribner v. O'Brien, Inc., 169 Conn. 389,400, 363 A.2d 160 (1975). "Evidence of custom in the trade may be admitted on the issue of the standard of care, but is not conclusive.Southern New England Telephone Co. v. D'Addario Construction Co.,33 Conn. Sup. 596, 598, 363 A.2d 766 (1976)." (External citations omitted.) Coburn v. Lenox Homes, Inc., supra, 381. Violations of applicable building code provisions are valid evidence that a defendant contractor has breached its duty of care. Coburn v. Lenox Homes, Inc.,
supra, 382; see also Building Service Corp. v. Planning and ZoningComm'n., 208 Conn. 267, 291, 545 A.2d 530 (1988); Edwards v. CodeEnforcement Committee, 13 Conn. App. 1, 9, 534 A.2d 617 (1987). Such CT Page 14956 evidence can provide helpful guidance to the factfinder who is called upon to consider issues related to the standard of care in a negligence matter involving construction services. Wagner v. Clark EquipmentCompany, Inc., 243 Conn. 168, 188, 700 A.2d 38 (1997). To recover in this action, in addition to proving breach of a duty, Liberty also must prove that its damages were both legally and proximately caused, pursuant to the applicable legal standards. Medcalf v. Washington Heights CondominiumAssn., supra, 57 Conn. App. 16. "The test for cause in fact is, simply, would the injury have occurred were it not for the actor's conduct. . . . The Connecticut Supreme Court has defined proximate cause as [a]n actual cause that is a substantial factor in the resulting harm. . . . The substantial factor test reflects the inquiry fundamental to all proximate cause questions, that is, whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence." (Citations and internal quotation marks omitted.) Medcalf v. Washington Heights Condominium Assn., supra,57 Conn. App. 16-17.
As to damages, Liberty claims an amount equal to the sum it was obligated to and did pay its insured, Harrington, to reimburse her for the loss for which the defendant is alleged to be liable. Such a claim is consistent with the contemporary tenets of the law of subrogation as observed in this state: "As now applied, the doctrine of equitable subrogation is broad enough to include every instance in which one person, not acting as a mere volunteer or intruder, pays a debt for which another is primarily liable, and which in equity and good conscience should have been discharged by the latter. . . . Subrogation is a highly favored doctrine . . . which courts should be inclined to extend rather than restrict." (Citations and quotation marks omitted.) Westchester FireIns. Co. v. Allstate Ins. Co., 236 Conn. 362, 371, 672 A.2d 939 (1996).
 II. LIBERTY'S CLAIMS OF NEGLIGENCE
As noted above, the court herein has referenced and incorporated the relevant findings of fact reached in Part II of the Memorandum of Decision after Trial issued in the companion matter, Harrington, et alv. Grillo, d/b/a Construction Unlimited, Docket No. CV98-0579272. These factual findings set forth the circumstances applicable to Harrington's underlying claim against Grillo, d/b/a Construction Unlimited, which formed the basis for the homeowner's claim against the contractor, and which, in turn, form the basis for the insurer's pending action. These findings serve the basis for concluding that the plaintiff has proved, by a preponderance of the evidence, the fundamental allegations of the Complaint dated May 2, 1997, including subparagraphs 8.A, 8.B., 8.C., 8.E. and 8.F. After consideration of all the testimony and documentary evidence presented in this matter, and having deliberated over the CT Page 14957 skillful written arguments presented by both counsel, the court has found this matter in favor of the plaintiff insurer for the following reasons:
The court concludes that as the result of the contract existing between Harrington and the defendant, Carpentry Unlimited was charged with the duty to perform the roofing construction work at 10 Manor Circle in the manner that a reasonably skilled builder, of ordinary prudence, would have exercised under the same or similar circumstances. Bennett v.Connecticut Hospice, Inc., supra, 56 Conn. App. 137; Medcalf v.Washington Heights Condominium Assn., supra, 57 Conn. App. 16; Coburn v.Lenox Homes, Inc., supra, 186 Conn. 375, 381. This duty further arose from the explicit and implicit agreements between the parties which called for Construction Unlimited to supply roofing construction services for Harrington "in a workmanlike manner according to standard practices."[3] Given its capacity as a purveyor of contracting work, it is reasonable to expect that Construction Unlimited would perform its construction services in a competent and adequate manner, according to the applicable standard of care, as well. Bennett v. ConnecticutHospice, Inc., supra, 56 Conn. App. 137; Coburn v. Lenox Homes, Inc.,
supra, 186 Conn. 375-75.
The court concludes that the defendant, Construction Unlimited, breached its underlying obligation to Harrington, by performing the roofing work at 10 Manor Circle in a negligent fashion, and by failing to comply with the standard of care applicable to such construction projects. In determining whether the defendant met the appropriate standard of care, the trial court found it significant that competent and credible evidence established both that the newly erected roof at 10 Manor Circle failed twice after a relatively brief period of use, and that the construction performed by the defendant failed to meet the pertinent standards for such work, as identified by James Arseneault, the building inspector for the Town of East Hartford. See Coburn v. LenoxHomes, Inc., supra, 186 Conn. 381-82. Arseneault's cogent and logical testimony was based upon his long experience in the building trades, upon his inspection of the defendant's work at 10 Manor Circle, and upon his familiarity with other similar projects. Arsenault's testimony, and the documentary evidence he produced, served as the basis for this court's conclusion that the normal life expectancy of a properly installed roof upon a residence such as that at 10 Manor Circle would exceed five years from the date of completion in the fall of 1993.[4] This expert's, testimony supports the inference that the roof failed after such a brief period of use by Harrington and her family, because the roof and its materials had not been properly applied. See Coburn v. Lenox Homes,Inc., supra, 381-382. The testimony of Arseneault concerning his examination of Harrington's roof, and the credible and consistent testimony of Julian Quirion, who removed the defendant's work and CT Page 14958 installed a new roof at 10 Manor Circle, support the reasonable and logical conclusion that the defendant failed to exercise the care that a skilled roofing contractor of ordinary prudence would have exercised under the circumstances existing in 1993. According to minimum applicable building standards, including the Building Officials Code Association (BOCA) manual Sections 2305.1, 2305.2 and 2306.1, this skill and care would have included use of saturated felt paper as an underlayment and secondary protective barrier between the interior residential structures and the elements of nature, although no felt paper was applied in the course of the defendant's construction work upon Harrington's house; solid metal flashing in the valley angles of the roof to prevent the entry of rainwater and other precipitation into the house below, although no metal flashing was applied in the course of this roofing work; and the use of four nails to secure each frill sheet of roofing shingles, although only three nails were used in that aspect of this roofing work. In short, the defendant's work was negligently performed at this site.
As to causation, the test to be applied in the instant matter is whether a reasonably experienced roofing contractor, who knew or should have been known basic appropriate methods concerning the construction of the roof and roof support structures, at premises like those present at 10 Manor Circle, would reasonably anticipate that harm of the general nature of that suffered in this case, was likely to result. See Medcalfv. Washington Heights Condominium Assn., supra, 57 Conn. App. 16-17;Pagano v. Maniscalco, supra, Superior Court, Docket No. CV92-040975-S. In this matter, the court was provided with ample direct and circumstantial evidence to support the determination that the defendant's negligence was a proximate cause of the water damage sustained at 10 Manor Circle. The absence of flashing would create a condition which was competent to cause or allow water to enter the roof structures, and to leak through to the interior of the house and the structures and personalty contained therein. Joseph Grillo's expectation that felt paper would be delivered to the 10 Manor Circle job site, and used in the roofing work performed at that location, indicated his knowledge and assumption that such material was properly required as a minimum component of the roof structure. The absence of felt paper upon Harrington's roof as noted by Arseneault and Quirion, notwithstanding Grillo's expectation that felt paper would be applied, establishes the lack of a structural physical barrier that would likely have protected not only the roof shingles, but the house and residence and contents below. The combination of these factors permitted the induction of unwanted rainwater, which to seep into the underlying roof and insulation structures, through to the interior of Harrington's house, resulting in the noted damage to the ceiling and walls of her dining room, the furniture in that room and to the ceiling of her patio. These conditions also necessitated the purchase and installation of the tarp to prevent further damage to the house and its CT Page 14959 contents. Arsenault's concluding and credible opinion was that the defendant's deviations from the standard of care when installing the roof on the Harrington house, including the noted non-compliance with BOCA standards, was the likely cause of the water damage to the property at 10 Manor Circle.
The direct and circumstantial evidence and the credible expert opinion submitted in this case thus establish, by a preponderance of the evidence, that the defendant's removal of the old roof and its installation of a replacement roof and roofing materials constituted a substantial factor in causing the damages suffered by Harrington, Liberty's insured. These damages, caused by the leakage of water through an inadequately installed roof and improperly applied roofing materials, constitute precisely the type of harm as were reasonably likely to flow from the defendant's negligence, which he should have foreseen and prevented through the use of proper construction techniques. See Medcalfv. Washington Heights Condominium Assn., supra, 57 Conn. App. 16-17; see also Pagano v. Maniscalco, supra, Superior Court, Docket No. CV92-040975S.
 III. LIBERTY'S CLAIMS FOR DAMAGES
As Liberty became liable to Harrington, through its provision of homeowner's insurance benefits which were incurred as a result of the defendant's negligence, so Carpentry Unlimited becomes liable to Liberty for the subrogation amount. The court has noted in the findings of fact reached in Part II of the Memorandum of Decision after Trial issued in Docket No. CV98-0579272, that although Harrington had placed a timely claim with Liberty, the insurer had extended homeowner's benefits which covered only a portion of the losses sustained as the result of water damage to the property at 10 Manor Circle. Liberty compensated Harrington for repairs to and painting of the ceiling and walls of her dining room, and for the ceiling of a patio also damaged from this entry of water caused by the negligent construction of the roof at issue. After Harrington paid the $250 deductible for this claim, Liberty paid its insured a net amount of $1022.00 for the damages and repair to the ceiling, walls and patio described above, plus $95.40 for the tarp used to protect her house and its contents from further damage which could have resulted from the defective roof application, for a total of $1117.40. However, despite Harrington's prompt presentation of claims, Liberty paid no compensation for defects in the roof itself, or for damage to her furniture. Liberty thus seeks to recover $1117.40 from the defendant, in recoupment of the amounts paid to its insured for the losses sustained to the ceiling, walls and patio, and the cost of the tarp. CT Page 14960
This amount represents no more than the total net figure paid by Liberty to Harrington, and no less. The evidence establishes, by a preponderance of the evidence, that Liberty has paid to the homeowner the damage or loss amount for which Carpentry Unlimited "is primarily liable, and which in equity and good conscience should have been discharged by the latter." Westchester Fire Ins. Co. v. Allstate Ins.Co., supra, 236 Conn. 371. Accordingly, as Liberty has satisfied its burden of proving the elements of Carpentry Unlimited's negligence in the performance of roofing work for Harrington, and as its damage claim is well within the bounds accepted in subrogation matters, this court will award $1117.40 to the plaintiff to be paid by the defendant, Carpentry Unlimited.
 IV. ORDERS
Therefore, it is the order of the court that judgment may enter for the plaintiff Liberty Mutual Insurance Co., as against the defendant Carpentry Unlimited, in the sum of $1117.40, representing direct damages incurred in payments to its insured due to the defendant's negligence.
The plaintiff having specifically requested neither costs nor other damages, there shall be no further award to any party.
BY THE COURT,
N. Rubinow, J.