******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

REGINA MENTION *v.* KENSINGTON
SQUARE APARTMENTS
(AC 42832)

Elgo, Cradle and Alexander, Js.

*Syllabus*

The plaintiff tenant sought, inter alia, an order to compel the defendant to exterminate an infestation of insects and rodents in her leased premises, one of six rental units in a building for which the defendant is the landlord. The plaintiff, who was the recipient of a rent subsidy, first reported the infestation to the defendant and then contacted the municipal agency responsible for housing code enforcement in the city in which the premises was located. An inspector from the agency ordered the defendant to rid the premises of the infestation and issued a notice of compliance after the defendant treated the infestation. The plaintiff thereafter filed a complaint for housing code enforcement pursuant to the applicable statute (§ 47a-14h), alleging that the defendant violated the statute (§ 47a-7 (a) (1)) when it failed to exterminate the infestation in the premises, and she began paying her portion of the monthly rent to the clerk of the court pursuant to § 47a-14h. The defendant filed a counterclaim alleging that the plaintiff had prevented and/or failed to prepare for its access to the premises in an attempt to debilitate and/or thwart its ability to comply with the housing code enforcement orders. The trial court determined that the premises had been infested with insects and rodents for more than one year, the defendant's efforts to remediate the infestation had not been reasonable as, inter alia, other units within the building also remained infested, and the defendant had violated its duties as a landlord pursuant to § 47a-7 and the housing code. The court rendered judgment in favor of the plaintiff on her complaint and on the defendant's counterclaim and awarded the plaintiff, inter alia, an abatement of any rent in arrearage and six months of prospective abatement of rent based on her share of the subsidized rent. Thereafter, the defendant appealed to this court, claiming, inter alia, that the court improperly concluded as a matter of law that the defendant had violated the housing code and the housing code was unconstitutionally vague, and the plaintiff filed a cross appeal, arguing that the court erred in calculating rent abatement based on her share of the subsidized rent. *Held*:

1. This court declined to review the defendant's claim that the trial court lacked subject matter jurisdiction to consider evidence of housing code violations that predated the filing of the plaintiff's complaint with the municipal agency; the defendant did not dispute that the trial court had subject matter jurisdiction over the plaintiff's complaint, as the plaintiff complied with the requirement pursuant to § 47a-14h that a complaint be made to the municipal agency responsible for enforcement of the housing code at least twenty-one days prior to the filing of a complaint with the court, and the defendant's claim that the trial court did not have jurisdiction over any evidence of housing code violations prior to the filing of the complaint was an evidentiary claim raised for the first time on appeal.

2. The defendant could not prevail on its claim that the trial court improperly concluded as a matter of law that the defendant violated the housing code; the city's housing code plainly and unambiguously required that, when an infestation exists in two or more dwelling units, the owner of the property was responsible for extermination, defined as the control and elimination of insects or other pests, and the court's factual findings that the defendant did not act reasonably to resolve the infestation problem because its actions were too slow and not effective were not clearly erroneous, as, on the basis of the evidence presented at trial, the court found that the premises and several other units in the building had been infested, that more than one year had elapsed between the initial report of infestation and the notice of compliance from the municipal agency, and that multiple other units remained infested in violation of the housing code.

3. The defendant could not prevail on its claim that the housing code, as applied to it in this case, was unconstitutionally vague: although the plaintiff claimed that the defendant failed to exhaust its administrative remedies, the doctrine of exhaustion of administrative remedies was not applicable, as the municipal agency responsible for enforcing the housing code was not a state agency as defined by statute (§ 4-166 (1)); moreover, the defendant's unpreserved claim that the housing code was void for vagueness failed to meet the requirement of *State* v. *Golding* (213 Conn. 233) that a constitutional violation occurred that deprived the defendant of a fair trial, as the defendant had proper notice of what constituted an infestation under the housing code and the required steps to remedy such an infestation, and the housing code did not lack minimal guidelines or sufficient standards to guide the municipal agency or the court with respect to its proper application in this case.

4. The plaintiff could not prevail on her claim in her cross appeal that the trial court erred in calculating rent abatement based on her share of the subsidized rent rather than the full market rent: § 47a-14h clearly and unambiguously authorized the court to order abatement of rent and return such rent paid to the court in proportion to the amount paid by each party; moreover, although the court was not required to make the subsidizing entity a party to the action, and the subsidizing entity was not made a party, the statute explicitly provided that, when a subsidizing entity is joined as a party and pays its share of rent to the court, any rent to be returned shall be returned to the tenant and such entity in proportion to the amount of rent each deposited with the court.

Argued March 1—officially released August 30, 2022

*Procedural History*

Action for housing code enforcement, and for other relief, brought to the Superior Court in the judicial district of New Haven, Housing Session, where the defendant filed a counterclaim; thereafter, the matter was tried to the court, *Cordani, J.*; judgment for the plaintiff on the complaint and on the counterclaim, from which the defendant appealed and the plaintiff cross appealed to this court. *Affirmed*.

*James P. Sexton*, with whom were *John Weikart*, and, on the brief, *Megan Wade*, for the appellant-cross appellee (defendant).

*Areeb Siddiqui* and *Patrick Monaghan*, certified legal interns, with whom were *J. L. Pottenger, Jr.*, and, on the brief, *Shannon Price* and *Nathan Leys*, certified legal interns, for the appellee-cross appellant (plaintiff).

*Melissa Marichal* and *Shelley White* filed a brief for New Haven Legal Assistance Association et al. as amici curiae.

*Opinion*

ALEXANDER, J. In this housing code enforcement action, the defendant, Kensington Square Apartments, appeals from the judgment of the trial court rendered in favor of the plaintiff, Regina Mention. On appeal, the defendant claims that (1) the court lacked subject matter jurisdiction to consider evidence in support of the plaintiff's claim that predated the filing of her complaint with the New Haven Livable City Initiative (Initiative), (2) the court improperly concluded as a matter of law that the defendant violated title V of the New Haven Code of Ordinances (housing code), and (3) the housing code is unconstitutionally vague. The plaintiff also challenges the judgment of the trial court, by way of a cross appeal, claiming that the court erred in calculating rent abatement based on her share of the subsidized rent, rather than the full market rent. We affirm the judgment of the trial court.

The following facts, as found by the court or otherwise undisputed by the parties, and procedural history are relevant to this appeal. In February, 2017, the plaintiff moved into an apartment located at 166 Edgewood Avenue, Apartment 2, in New Haven (premises). The premises is one of six rental units in the building. The defendant is the landlord of the premises. The plaintiff's rent is subsidized and her share is $226 per month.[1] The premises became infested with insects and rodents around September, 2017, at which time the plaintiff reported the infestation to the defendant. Several other rental units in the building had been infested with insects and rodents during the period in which the premises was infested and remained infested through the date of trial. The defendant hired an exterminator who visited the premises several times between September, 2017, and December, 2018.

On September 17, 2018, the plaintiff contacted the Initiative to report the infestation of the premises. The Initiative is the municipal agency responsible for housing code enforcement in New Haven. On September 20, 2018, an inspector from the Initiative examined the premises and found evidence of insect and rodent infestation. The inspector determined that, pursuant to article III, paragraph 309 of the housing code, the defendant was responsible for extermination and ordered the defendant to rid the apartment of the insect and rodent infestation within three days and to provide documentation of a treatment plan from a licensed exterminator. See New Haven Code of Ordinances, tit. V, art. III, ¶ 309. The defendant treated the infestation and the inspector issued a notice of compliance on December 19, 2018.

On November 15, 2018, the plaintiff initiated this action by filing a complaint for housing code enforcement pursuant to General Statutes § 47a-14h, in which

she alleged that the defendant had violated General Statutes § 47a-7 (a) (1)[2] by failing to exterminate the infestation in the premises. The plaintiff sought (1) an order directing the defendant to comply with its duties pursuant to § 47a-7 (a) (1), (2) an order appointing a receiver to collect rent pursuant to § 47a-14h (h),[3] (3) a retroactive abatement of rent paid, and (4) such other relief in law or equity that the court may deem proper. As a result of the plaintiff's complaint and pursuant to § 47a-14h (h), the plaintiff began paying her portion of the monthly rent to the clerk of the court. The defendant filed an answer, special defenses, and counterclaim. In its counterclaim, the defendant alleged that the plaintiff "prevented access and/or failed to prepare for  .  .  . repairs and/or services in an effort to debilitate and/or thwart the counterclaim defendant's attempts to com- ply with such housing code enforcement orders or repair/service requests of the counterclaim plaintiff." The defendant also raised the defense of unclean hands, alleging that the plaintiff made numerous requests for repairs of the premises but never complained of pests or rodents as alleged in the complaint.

A trial on the plaintiff's complaint and the defendant's counterclaim was held on February 28 and March 28, 2019. In its memorandum of decision, the court found that the premises was infested with insects and rodents from September, 2017, until at least December 19, 2018, and that such infestation materially affected the health and safety of the occupants. It also found that the plain- tiff did not contribute to the infestation, that she expended her own resources and time in addressing the infestation, and that she reasonably cooperated with the defendant in its attempts to remedy the infestation. The court further found that, "to a small extent, insects and rodents still exist in the premises, likely because the insect and rodent infestation in other rental units within the building [had] not yet been brought under control." The court determined that, although the defen- dant had "exerted substantial efforts to remediate the infestation problem  .  .  .  the defendant's efforts were not reasonable because of (i) the long time period that elapsed between initial report (September, 2017) and compliance (December, 2018), (ii) the fact that other units within the building remain infested, and (iii) insects still enter the premises, albeit to a much lesser extent, from the other units in the building." The court concluded that the defendant had violated its duties as a landlord pursuant to § 47a-7 and the housing code.

The court rendered judgment in favor of the plaintiff on her complaint and on the defendant's counterclaim. It awarded the plaintiff $1130, the amount of rent she had paid into court. It also awarded an abatement of any rental arrearage that may exist and six months of prospective abatement of rent. Finally, the court ordered the defendant to eradicate the insect and rodent infestation in the entire building within two months.

This appeal and cross appeal followed.

I

We first address the defendant's claim that the court lacked subject matter jurisdiction to consider evidence in support of the plaintiff's claim that predated the filing of her complaint with the Initiative. Specifically, the defendant contends that, because a cause of action pursuant to § 47a-14h is purely statutory, the court did not have jurisdiction over the case until the plaintiff filed the complaint with the Initiative and waited twenty-one days to file a complaint in the Superior Court. The defendant claims that the court could not consider evidence regarding any violations that took place prior to the date when the complaint was filed with the Initiative. We disagree.

We begin our analysis by setting forth the standard of review and legal principles relevant to our review of this claim. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Moreover . . . [s]ubject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . [J]urisdiction of the [subject matter] is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Citation omitted; internal quotation marks omitted.) *A Better Way Wholesale Autos, Inc.* v. *Saint Paul*, 338 Conn. 651, 658, 258 A.3d 1244 (2021). Furthermore, "[a] claim that a court lacks subject matter jurisdiction may be raised at any time during the proceedings . . . including on appeal . . . ." (Internal quotation marks omitted.) *Premier Capital, LLC* v. *Shaw*, 189 Conn. App. 1, 5, 206 A.3d 237 (2019).

We next set forth the relevant language of the statute. Section 47a-14h provides in relevant part: "(a) Any tenant who claims that the landlord has failed to perform his or her legal duties, as required by section 47a-7 . . . may institute an action in the superior court having jurisdiction over housing matters in the judicial district in which such tenant resides to obtain the relief authorized by this section . . . . (b) The action shall be instituted by filing a complaint, under oath, with the clerk of the court. . . . The complaint shall also allege that at least twenty-one days prior to the date on which the complaint is filed, the tenant made a complaint concerning the premises to the municipal agency, in the municipality where the premises are located, responsible for the enforcement of the housing code . . . ."

In *Dugan* v. *Milledge*, 196 Conn. 591, 595, 494 A.2d 1203 (1985), our Supreme Court held that the requirement of notification to the housing code enforcement agency set forth in § 47a-14h is mandatory and "[c]ompliance with this essential condition [is] a requisite for the court's jurisdiction." In that case, the plaintiff filed a complaint pursuant to § 47a-14h prior to notifying the housing code enforcement agency. Id., 596. The trial court dismissed the plaintiff's complaint for lack of subject matter jurisdiction. Id., 592. Our Supreme Court affirmed the trial court's dismissal after determining that notification to the housing code enforcement agency was a condition precedent to maintaining the action, and, therefore, that the court lacked subject matter jurisdiction over the plaintiff's complaint. Id., 595–96.

In the present case, the defendant does not dispute that the plaintiff complied with the requirement that a complaint be made to the municipal agency responsible for enforcement of the housing code, namely, the Initiative, at least twenty-one days prior to the filing of a complaint with the court; see General Statutes § 47a-14h (b); or that the court had jurisdiction over the plaintiff's complaint. The defendant contends, however, that any evidence of housing code violations prior to the September 17, 2018 filing of the plaintiff's complaint with the Initiative is outside the court's jurisdiction. We do not agree with the defendant's contention. We conclude that the defendant's claim is not a challenge to the court's subject matter jurisdiction. Rather, it is an evidentiary claim that is being raised for the first time on appeal. The defendant essentially is claiming that the evidence of any violation prior to September 17, 2018, is not relevant to the plaintiff's complaint with the Initiative.

"The standard for the preservation of a claim of improperly admitted evidence at trial is well settled. Practice Book § 60-5 provides in relevant part that [this] court shall not be bound to consider a claim unless it was distinctly raised at the trial . . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly. . . . Our rules of practice make it clear that counsel must object to a ruling of evidence [and] state the grounds upon which objection is made . . . to preserve the grounds for appeal. . . . These requirements are not simply formalities. . . . We consistently have stated that we will not consider evidentiary rulings where counsel did not properly preserve a claim of error by objection . . . ." (Internal quotation marks omitted.) *Villa* v. *Rios*, 88 Conn. App. 339, 344, 869 A.2d 661 (2005). The defendant never objected in the trial court to the evidence it now challenges on appeal. Consequently, we decline to review such a claim. The plaintiff plainly complied with the notification requirement set forth in § 47a-14h, and therefore

met the jurisdictional requirement set forth in § 47a-14h and recognized by the court in *Dugan* v. *Milledge*, supra, 196 Conn. 595. Accordingly, the court had subject matter jurisdiction over the plaintiff's complaint.

## II

We next address the defendant's claim that the court improperly concluded as a matter of law that the defendant violated the housing code. Specifically, the defendant contends that the trial court's incorrect interpretation of the housing code resulted in its improper conclusion that the defendant failed to act reasonably in the context of what the housing code requires. We disagree.

We first set forth our standard of review and the legal principles that guide our analysis. "Our interpretation of ordinances presents a question of law and, therefore, our review is plenary. . . . We interpret and construe local ordinances according to the principles of statutory construction." (Citation omitted; internal quotation marks omitted.) *Azzarito* v. *Planning & Zoning Commission*, 79 Conn. App. 614, 622, 830 A.2d 827, cert. denied, 266 Conn. 924, 835 A.2d 471 (2003); see also *O'Shea* v. *Scherban*, 339 Conn. 775, 784, 262 A.3d 776 (2021). "Under General Statutes § 1-2z, [t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case . . . ." (Internal quotation marks omitted.) *Diaz* v. *Bridgeport*, 208 Conn. App. 615, 622?23, 266 A.3d 909 (2021).

We next set forth the relevant provisions of the housing code. The housing code authorizes an enforcing officer to "make inspections to determine the condition of . . . [the] premises" in order to safeguard "the health and safety and welfare of the occupants of dwellings and of the general public." New Haven Code of Ordinances, tit. V, art. II, ¶ 200. It further provides in relevant part: "Whenever the enforcing officer determines that there are reasonable grounds to believe that there has been a violation of any provision of this title, he shall give notice of such alleged violation to the person or persons responsible therefor, as hereinafter provided. Such notice shall: (a) Be in writing; (b) Include a statement of the reason why it is being issued; (c) Allow a reasonable time for the performance of any act it requires . . . (e) Contain an outline of remedial action, which if taken, will effect compliance with the

provisions of this title and with rules and regulations adopted pursuant thereto." Id., ¶ 201. Additionally, the housing code provides that, "[w]henever infestation exists, in two (2) or more of the dwelling units in any dwelling . . . extermination shall be the responsibility of the owner." Id., art. III, ¶ 309.

The housing code also provides relevant definitions. It defines extermination as "the control and elimination of insects, or other pests, by eliminating their harborage places; by removing or making inaccessible materials that may serve as their food; by poisoning, spraying, fumigating, trapping; or by any other recognized and legal pest elimination methods approved by the enforcing officer." Id., art. I, ¶ 100 (h). Infestation is defined as "the presence, within or around a dwelling, [of] any insects, rodents or other pests." Id., ¶ 100 (*l*).

The housing code plainly and unambiguously requires that, when an infestation exists in two or more dwelling units, the owner of the property, in this case the defendant, is responsible for extermination. It also clearly provides that extermination is the "control *and* elimination of insects, or other pests." (Emphasis added). Id., ¶ 100 (h). The court, therefore, properly determined that, because an infestation existed in multiple dwelling units, the defendant was required to remove the infestation by controlling and eliminating insects and rodents from all affected units.

The defendant also challenges the court's determination that, although the defendant took steps to remediate the infestation, it did not act reasonably to resolve the infestation problem because it acted "too slowly and not as effectively as required." To the extent the defendant challenges the court's factual findings, our review of those findings is limited to determining whether they were clearly erroneous. "In a case tried before the court, the trial judge is the sole arbiter of the credibility of witnesses and the weight to be afforded to specific testimony. . . . [When] the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citation omitted; internal quotation marks omitted.) *Village Mortgage Co.* v. *Veneziano*, 175 Conn. App. 59, 69, 167

A.3d 430, cert. denied, 327 Conn. 957, 172 A.3d 205 (2017).

On our thorough review of the record, we cannot conclude that the court's findings were clearly erroneous. On the basis of the evidence presented at trial, the court found that the premises and several other rental units in the building were infested with insects and rodents. The defendant, therefore, was required, pursuant to article III, paragraph 309 of the housing code, to exterminate the plaintiff's premises and any other infested apartments in the building. The court further found that a significant period of time had elapsed between the initial report of infestation and the issuance of the notice of compliance from the Initiative.

Although the housing code authorizes the inspector to uncover violations and provide an outline of remedial action to be taken, the notice of compliance issued by the Initiative in regard to the premises is not conclusive as to whether the defendant complied with its duties under the housing code. The court noted that insects were still present in the premises, just to a lesser extent, likely due to the fact that the insect and rodent infestation in other rental units had not yet been brought under control. At trial, there was also evidence that cockroaches can travel from one infested rental unit to another and that an individual's housekeeping habits may create conditions that allow for the increase of insect activity. On the basis of the totality of this evidence, it was reasonable for the court to conclude that, until the infestation in each affected rental unit was eliminated, the infestation in the premises would not be adequately addressed. Because the premises remained infested until at least December 19, 2018, and multiple other rental units in the building remained infested, the defendant did not comply with its duties under the housing code because it failed to adequately exterminate the infestation in each infested rental unit, including the premises. See New Haven Code of Ordinances, tit. V, art. III, ¶ 309; id., art. I, ¶ 100 (h).

### III

We next address the defendant's contention that the housing code, as applied to it in this case, is unconstitutionally vague. Specifically, the defendant claims that the court's interpretation of the housing code "failed to provide the defendant with notice as to what actually constitutes an 'infestation,' as well as whether the defendant had to take any steps beyond what the Initiative had ordered to ensure its mitigation efforts were reasonable and, if so, what those additional steps were." The defendant further claims that the housing code was arbitrarily and discriminatorily enforced because the court "concluded that, notwithstanding the defendant having done everything the Initiative ordered, indeed having even made 'substantial efforts' at extermination, its actions were still unreasonable." The defendant con-

cedes that it did not raise its void for vagueness claim before the trial court, but argues that this claim is reviewable pursuant to *State* v. *Golding*, 213 Conn. 233, 239?40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). The plaintiff responds that the defendant's void for vagueness challenge is unreviewable because the defendant failed to exhaust its administrative remedies and, therefore, the court lacks subject matter jurisdiction. In the alternative, the plaintiff argues that the defendant cannot prevail under *Golding* because it has failed to demonstrate that the housing code is unconstitutionally vague as applied.

### A

We first address the plaintiff's contention that this court lacks subject matter jurisdiction to decide the defendant's void for vagueness claim because the defendant failed to exhaust its administrative remedies by appealing the decision of the Initiative's inspector to New Haven's code enforcement board of appeals. In its reply brief, the defendant responds that its void for "vagueness claim is not one that could have been the subject of an administrative appeal from the agency's order because the claim is that the housing code is vague as applied to the defendant by way of and under the circumstances of the present § 47a-14h proceeding, not a challenge to the original administrative order." We conclude that, because the Initiative is a local agency, rather than a state agency, the doctrine of exhaustion of administrative remedies is inapplicable to the present case. See *Edwards* v. *Code Enforcement Committee*, 13 Conn. App. 1, 10, 534 A.2d 617 (1987).

We begin with our standard of review. "Because the exhaustion [of administrative remedies] doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the [defendant's] claim. . . . [B]ecause [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Godbout* v. *Attanasio*, 199 Conn. App. 88, 97, 234 A.3d 1031 (2020).

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . The doctrine provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted. . . . If the available administrative procedure . . . provide[s] the [party] with a mechanism for attaining the remedy that [it] seek[s] . . . [it] must exhaust that remedy. . . . The [party's] preference for a particular remedy does not determine the adequacy of that remedy. [A]n administrative remedy, in order to be adequate, need not comport with the [party's] opinion of what a perfect remedy would be.

. . .

"A primary purpose of the doctrine is to foster an orderly process of administrative adjudication and judicial review, offering a reviewing court the benefit of the agency's findings and conclusions. It relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review. . . . Moreover, the exhaustion doctrine recognizes the notion, grounded in deference to [the legislature's] delegation of authority to coordinate branches of [g]overnment, that agencies, not the courts, ought to have primary responsibility for the programs that [the legislature] has charged them to administer." (Citation omitted; internal quotation marks omitted.) *Coyle* v. *Commissioner of Revenue Services*, 142 Conn. App. 198, 206, 69 A.3d 310 (2013), appeal dismissed, 312 Conn. 282, 91 A.3d 902 (2014).

Article II, paragraph 203 (a) of the housing code provides in relevant part: "Any person adversely affected by any order which has been issued in connection with the enforcement of any provisions of this title may request and . . . shall be granted a hearing on the matter before the board of appeals established under section 21B-7 of the Code of Ordinances . . . ." Paragraph 204[4] provides that, after a hearing, the board may, inter alia, grant an extension or variance. New Haven Code of Ordinances, tit. V, art. II, ¶ 204. The housing code further provides that "[a] person aggrieved by the decision of the enforcing officer or the board of code appeals may seek relief therefrom in any court of competent jurisdiction, as provided by the laws of this state." Id., ¶ 206.

In *Edwards* v. *Code Enforcement Committee*, supra, 13 Conn. App. 10, this court held that the defendant, the code enforcement committee of Vernon, was not a state agency and, therefore, was not subject to provisions of the Uniform Administrative Procedure Act (UAPA), General Statutes §§ 4-166 through 4-189. In *Edwards*, the plaintiffs, owners of real estate in the town of Vernon, were cited by Vernon's housing code inspector for alleged code violations. Id., 2. The plaintiffs appealed to the housing code enforcement committee, which confirmed the inspector's findings, and, thereafter, the plaintiffs appealed to the Superior Court pursuant to General Statutes § 4-183.[5] Id., 3. Service of the petition was made upon the chairman of the code enforcement committee, and the defendant filed a motion to dismiss the appeal due to insufficiency of service of process, claiming that service was not made pursuant to General Statutes § 52-57, which requires that process in a civil action against a town be served upon one of its specified officials. Id. The court granted the defendant's motion to dismiss, and the sole issue in the plaintiff's appeal to this court was whether the

court erred in finding that the defendant was not an " 'agency' " within the meaning of the UAPA.[6] Id.

The defendant in *Edwards* maintained that it was a town agency enforcing the local housing code in the exercise of the town's police power, and, therefore, it was not a state agency within the provisions of the UAPA. Id., 5. The court reasoned that, "[b]y virtue of . . . legislative delegation of general police powers to local officials and agencies [pursuant to General Statutes § 7-148 (c)], their enforcement has been made a local function and duty." Id., 7. Accordingly, the court concluded that the defendant was not a state agency pursuant to § 4-166 (1) of the UAPA. Id., 11.

In the present case, we conclude that the New Haven housing code enforcement division is not a state agency as defined in § 4-166 (1). See id. Accordingly, the UAPA and the doctrine of exhaustion of administrative remedies are not applicable to the present case.

B

We next address the defendant's claim that the housing code is void for vagueness as applied to the present case. Although it did not raise its void for vagueness claim before the trial court, the defendant contends that this claim is reviewable pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude that the defendant cannot prevail pursuant to *Golding* because the housing code is not void for vagueness as applied to the defendant.

"Under *Golding*, a [party] can prevail on a claim of constitutional error not preserved at trial only if the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the [party] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [party's] claim will fail. The appellate tribunal is free, therefore, to respond to the [party's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *In re Madison C.*, 201 Conn. App. 184, 190, 241 A.3d 756, cert. denied, 335 Conn. 985, 242 A.3d 480 (2020). "The first two [*Golding*] requirements involve a determination of whether the claim is reviewable; the second two requirements involve a determination of whether the defendant may prevail." (Internal quotation marks omitted.) *Wethersfield ex rel. Monde* v. *Eser*, 211 Conn. App. 537, 554, 274 A.3d 203 (2022).

In the present case, the record is adequate to review the defendant's claim, and the defendant has asserted a claim of constitutional magnitude. We conclude, how-

ever, that the defendant has failed to demonstrate that the housing code is unconstitutionally vague as applied to it for purposes of the third prong of *Golding* and, therefore, the defendant cannot prevail on this claim.

"A statute is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity. . . . The party challenging a statute's constitutionality has a heavy burden of proof; the unconstitutionality must be proven beyond all reasonable doubt. . . . Additionally, in a vagueness challenge, such as this, civil statutes can be less specific than criminal statutes and still pass constitutional muster. . . . To prove that a statute is unconstitutionally vague, the challenging party must establish that an ordinary person is not able to know what conduct is permitted and prohibited under the statute. . . .

"To demonstrate that [a statute] is unconstitutionally vague as applied to [it], the [defendant] therefore must . . . demonstrate beyond a reasonable doubt that [it] had inadequate notice of what was prohibited or that [it was] the victim of arbitrary and discriminatory enforcement. . . . [T]he void for vagueness doctrine embodies two central precepts: the right to fair warning of the effect of a governing statute . . . and the guarantee against standardless law enforcement. . . . If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . The determination of whether a statutory provision is unconstitutionally vague is a question of law over which we exercise de novo review. . . . The foregoing principles apply equally to municipal ordinances." (Citation omitted; internal quotation marks omitted.) *Petrucelli* v. *Meriden*, 197 Conn. App. 1, 18–19, 231 A.3d 231, cert. denied, 335 Conn. 923, 233 A.3d 1091 (2020).

The defendant contends that the court's interpretation and application of the housing code rendered the housing code unconstitutionally vague because it (1) failed to provide the defendant with notice as to what constitutes an "infestation" and whether the defendant was required to take any steps beyond what the Initiative had ordered to ensure its mitigation efforts were reasonable and (2) was arbitrarily and discriminatorily enforced because, despite the defendant's efforts at remediation and the Initiative's issuance of a notice of compliance, the court determined that the defendant's efforts were not reasonable.

We begin with the defendant's contention that the housing code does not provide proper notice as to what constitutes an infestation and what steps must be taken when the Initiative identifies an infestation. We disagree.

As we noted in part II of this opinion, the housing code defines an infestation as "the presence, within or around a dwelling, [of] any insects, rodents or other pests." New Haven Code of Ordinances, tit. V, art. I, ¶ 100 (*l*). It further defines "extermination" as "the control *and* elimination of insects, or other pests, by eliminating their harborage places; by removing or making inaccessible materials that may serve as their food; by poisoning, spraying, fumigating, trapping; or by any other recognized and legal pest elimination methods approved by the enforcing officer." (Emphasis added.) Id., ¶ 100 (h). The housing code authorizes an enforcing officer to perform inspections and determine the condition of dwellings, as well as to issue notice of alleged violations that includes an outline of remedial action and a reasonable time to perform such actions. See id., art. II, ¶¶ 200, 201. The housing code further provides that, "[w]henever an infestation exists, in two (2) or more of the dwelling units in any dwelling, or in the shared or common parts of any dwelling containing two (2) or more dwelling units, extermination shall be the responsibility of the owner." Id., art. III, ¶ 309.

We conclude that the defendant had proper notice of what constitutes an infestation under the housing code and the required steps to remedy such infestation. The relevant provisions of the housing code expressly state what an infestation is and when a landlord has the duty to exterminate such infestation. It also expressly provides that extermination is both the control *and* the elimination of insects or other pests and provides the manner in which extermination can be performed.

The court, applying the applicable provisions of the housing code, determined that an infestation existed in both the plaintiff's premises and other rental units in the building and that, although such infestation had been treated by an exterminator, it had not been controlled and eliminated as required by the housing code. The fact that the Initiative, after determining that there existed an infestation that violated article III, paragraph 309 of the housing code, issued a notice of compliance[7] to the defendant is not the determining factor as to whether an infestation existed or whether the defendant had complied with its duties under the housing code. In addition to the notice of compliance issued by the Initiative, the court was presented with evidence that insects and rodents still existed in the plaintiff's premises, albeit to a lesser extent, and that there existed an insect and rodent infestation in multiple other rental units in the building that contained the plaintiff's premises. The presence of insects and rodents in the premises and other units was sufficient to satisfy the definition of an infestation provided in the housing code. See id., art. I, ¶ 100 (*l*). Furthermore, although the defendant also claims that three days is not a reasonable time in which to remediate an infestation in a multifamily

dwelling, the court ordered the defendant to eradicate the infestation within two months from the date of its decision. We conclude that, on the basis of the facts and circumstances of the present case, a person of ordinary intelligence would know that the presence of insects and rodents in multiple rental units constitutes an infestation as that term is defined in the housing code and that the defendant had a duty to exterminate the infestation in each affected unit by controlling and eliminating the insects and rodents.

We next address the defendant's claim that the housing code was arbitrarily and discriminatorily enforced because the defendant did everything the Initiative ordered and received a notice of compliance, but the court still determined that the defendant's efforts were not reasonable. We disagree.

The defendant claims that the vagueness of the housing code impermissibly delegates basic policy matters to the Initiative and to the court and that the housing code's lack of meaningful guidance resulted in its arbitrary and discriminatory enforcement. In light of the evidence that insects and rodents still existed in the plaintiff's premises at the time of trial, and that several rental units in the building remained infested, the court, applying the relevant, express provisions of the housing code, properly concluded that an infestation existed and that the defendant had not complied with the provisions of the housing code requiring it to exterminate an infestation that exists in two or more dwelling units. See id., art. III, ¶ 309. We cannot conclude that the housing code lacked minimal guidelines or sufficient standards to guide the Initiative and the court with respect to its proper application in the present case.

We conclude that the defendant has failed to meet its burden of demonstrating beyond a reasonable doubt that it lacked adequate notice or that it was the victim of arbitrary and discriminatory enforcement. Accordingly, the defendant's claim fails under *Golding*'s third prong because it failed to establish that a constitutional violation occurred that deprived it of a fair trial.

IV

We now turn to the plaintiff's cross appeal, in which she claims that the court erred in calculating rent abatement, pursuant to § 47a-14h (e), based on her share of the subsidized rent, rather than the full market rent. Specifically, the plaintiff contends that, "when rent abatement is awarded in a § 47a-14h action to a subsidized tenant, it should be calculated based upon the full market rent of the apartment, except in the narrow circumstances (inapplicable here) where a subsidizing agent is made a party and pays the subsidy into court during the action's pendency." Essentially, the plaintiff contends that, had the subsidizing entity been joined as a party, the plaintiff would not be entitled to abate-

ment of rent equal to the full market rent, but because the subsidizing entity was not joined as a party and did not pay its portion of rent to the court, the plaintiff is entitled to abatement of rent equal to the full market rent. We disagree.

The following facts and procedural history are relevant to our resolution of this claim. The plaintiff's portion of the monthly rent was $226. In her complaint, the plaintiff sought, inter alia, "[a] retroactive abatement of rent paid." In its decision, the court awarded the plaintiff "the amount currently paid into court—[$1130]." It also ordered an abatement of any rental arrearage and prospective abatement of the plaintiff's share of the rent for the next six months.

We begin by setting forth the standard of review and legal principles relevant to our resolution of the plaintiff's claim. The plaintiff's claim raises a question of statutory interpretation, over which our review is plenary. See *777 Residential, LLC* v. *Metropolitan District Commission*, 336 Conn. 819, 827, 251 A.3d 56 (2020). "[W]hen interpreting a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . However, [w]hen a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and [common-law] principles governing the same general subject matter. . . . A statute is ambiguous if, when read in context, it is susceptible to more than one reasonable interpretation." (Citation omitted; internal quotation marks omitted.) *Dominguez* v. *New York Sports Club*, 198 Conn. App. 854, 860–61, 234 A.3d 1017 (2020).

We next set forth the relevant language of the statutes. Section 47a-14h (e) provides in relevant part: "The complainant may seek and the court may order interim or final relief including, but not limited to, the following . . . (4) an award of money damages, which may include a retroactive abatement of *rent paid pursuant to subsection (h) of this section* . . . . If the court orders retroactive abatement of rent pursuant to subdivision (4) of this subsection and all or a portion of the tenant's rent was deposited with the court pursuant to subsection (h) of this section by a housing authority, municipality, state agency or similar entity, any rent ordered to be returned *shall be returned to the tenant and such entity in proportion to the amount of rent*

*each deposited with the court pursuant to subsection (h) of this section.*" (Emphasis added.)

Section 47a-14h (h) provides in relevant part: "On each rent due date on or after the date when the complaint is filed with the clerk of the court . . . the tenant shall deposit with the clerk of the court an amount equal to the last agreed-upon rent. If all or a portion of the tenant's rent is being paid to the landlord by a housing authority, municipality, state agency or similar entity, this requirement shall be satisfied if the tenant deposits an amount equal to such tenant's portion of the last agreed-upon rent with the clerk. The court may make such entity a party to the action. . . ." General Statutes § 47a-1 (h) provides: " 'Rent' means all periodic payments to be made to the landlord under the rental agreement."

We conclude that § 47a-14h clearly and unambiguously authorizes the court to order abatement of rent and, in circumstances when all or a portion of rent was paid to the court, order the return of such rent paid to the court in proportion to the amount paid by each party. Section 47a-14h (e) plainly provides that the court may order a retroactive abatement of rent "paid pursuant to subsection (h) of this section." Section 47a-14h (h) provides that a subsidized tenant "*shall* deposit with the clerk of the court an amount equal to" her portion of the monthly rent. (Emphasis added.) It further provides that the "court *may* make" the subsidizing entity a party to the action. (Emphasis added.) General Statutes § 47a-14h (h). The statute does not require that the court make the subsidizing entity a party to the action, nor does it require that the subsidizing entity pay its portion of the monthly rent into court. See *Angelsea Productions, Inc.* v. *Commission on Human Rights & Opportunities*, 236 Conn. 681, 694, 674 A.2d 1300 (1996) ("[t]he use of the word 'shall' in conjunction with the word 'may' confirms that the legislature 'acted with complete awareness of their different meanings' . . . and that it intended the terms to have different meanings" (citation omitted)). Because § 47a-14h (e) authorizes the court to order abatement of rent paid pursuant to subsection (h), and that subsection requires only that the tenant pay her share of the monthly rent to the court, the statute authorizes the court to award abatement of the tenant's share of the monthly rent that was paid into court. Furthermore, even if the subsidizing entity had been made a party to the action, the statute plainly authorizes the court to order the return of each party's share of the subsidized rent that was paid to the court. General Statutes § 47a-14h (e). We find no language in the statute to support the plaintiff's contention that § 47a-14h (e) compels the court to award, to the plaintiff, abatement of rent equal to the full market value of rent.

In her brief, the plaintiff contends that "[t]his court

has already addressed the issue of rent abatement and subsidized tenancies in title 47a of the General Statutes." The plaintiff further asserts that, "[u]nder a subsidy based interpretation of rent abatement in § 47a-14h, a landlord who cannot lawfully receive rent under [General Statutes] § 47a-4a[8] would still receive and retain payments from a subsidizing entity," resulting in an "undeserved windfall." The plaintiff points to *Rodriguez* v. *Ancona*, 88 Conn. App. 193, 868 A.2d 807 (2005), to support her proposition that rent abatement must be equal to the full market value of rent.[9]

In *Rodriguez*, this court interpreted the meaning of the phrase " 'one month's rent' " as used in General Statutes § 47a-18a.[10] Id., 198. In that case, the plaintiff, a tenant in a subsidized apartment, sued her landlord, the defendant, for illegal entry into her apartment in violation of General Statutes § 47a-16.[11] Id., 195–96. Section 47a-18a provides that, as damages for illegal entry, a tenant may recover from a landlord "actual damages less than an amount equal to one month's rent and reasonable attorney's fees." The trial court awarded the plaintiff $438, an amount equal to her portion of one month's rent. *Rodriguez* v. *Ancona*, supra, 196. On appeal, the plaintiff argued that the statute required that damages for the defendant's illegal entry be based on the full rent due to the landlord and not just her portion due under the lease. Id., 197. This court determined that the term " 'rent' " as used in § 47a-18a was ambiguous, and examined the definition of " 'rent' " provided in § 47a-1 (h), which provides that rent is " 'all periodic payments to be made to the landlord under the rental agreement.' " Id., 198–99. This court concluded that, "[b]ecause the term 'rent' is defined in § 47a-1 (h) as including all periodic payments made to a landlord, we understand the same term in § 47a-18a as including all rent payments made to the landlord, regardless of their source." Id., 199. The court explained that " '[o]ne month's rent' " as used in § 47a-18a "is merely the statutory standard for damages assessed against a landlord to deter him or her from illegally entering a tenant's apartment. Making damages dependent on the source of rent payments would cause unfair discrepancies in the amounts recovered by tenants. . . . The result urged by the defendant and adopted by the [trial] court would have the effect of decreasing a landlord's incentive to comply with the statute's proscriptions when renting to substantially subsidized tenants. . . . This result gives a landlord an equal incentive not to violate a tenant's privacy rights, regardless of the tenant's economic status." Id., 199–200. It further stated that it could find "no language in the applicable statutory scheme that warrants the disparate treatments of tenants based on the amount of rent they actually pay." Id., 200.

*Rodriguez*, however, is distinguishable from the present case. The statute at issue in *Rodriguez*, § 47a-18a,

does not provide for abatement of rent but, rather, provides for damages for unlawful entry equal to " 'one month's rent.' " Id., 198. Section 47a-18a does not define the phrase "one month's rent" or further qualify its meaning. In interpreting the meaning of that phrase, the court in *Rodriguez*, therefore, looked to the statutory definition of " 'rent' " in addition to the deterrent purpose of the statute. *Rodriguez* v. *Ancona*, supra, 199. In the present case, § 47a-14h provides for damages in the form of, inter alia, rent abatement, and is therefore consistent with § 47a-4a. When the plaintiff is a subsidized tenant, the statute does provide an avenue for abatement of the full market value of rent by authorizing, but not mandating, the court to make the subsidizing entity a party to the action and requiring it to pay its portion of the rent to the court. General Statutes § 47a-14h (h). Further, the statute explicitly provides that, when a subsidizing entity is joined as a party and pays its share of rent to the court, "any rent ordered to be returned *shall be returned to the tenant and such entity in proportion to the amount of rent each deposited with the court.*" (Emphasis added.) General Statutes § 47a-14h (e). This provision negates the plaintiff's argument that when a subsidized tenant brings an action pursuant to § 47a-14h, the landlord will receive an "undeserved windfall" if rent abatement is ordered. In the present case, however, the court did not make the subsidizing entity a party to the action and, therefore, the statute authorized the court to return to the plaintiff only her portion of the monthly rent that was paid to the court.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff is a recipient of a rent subsidy under the housing assistance program administered by the Department of Housing and Urban Development pursuant to section 8 of the National Housing Act, as amended in 1974 and codified at 42 U.S.C. § 1437f. The subsidizing agency was not made a party to this action in the trial court, nor is it a party to this appeal.

[2] General Statutes § 47a-7 (a) (1) provides: "A landlord shall: (1) Comply with the requirements of chapter 368o and all applicable building and housing codes materially affecting health and safety of both the state or any political subdivision thereof . . . ."

[3] General Statutes § 47a-14h (h) provides in relevant part: "On each rent due date on or after the date when the complaint is filed with the clerk of the court, or within nine days thereafter . . . the tenant shall deposit with the clerk of the court an amount equal to the last agreed-upon rent. If all or a portion of the tenant's rent is being paid to the landlord by a housing authority, municipality, state agency or similar entity, this requirement shall be satisfied if the tenant deposits an amount equal to such tenant's portion of the last agreed-upon rent with the clerk. . . ."

[4] Title V, article II, paragraph 204 of the New Haven Code of Ordinances provides in relevant part: "Such hearing shall be had before the members of said board. Said board, by a majority vote of those present, may sustain, modify or withdraw the notice; it may also grant an extension or variance in accordance with the following conditions:

"(a) Extension. The time for performance of any act required by the order may be extended for not more than eighteen (18) months subject to appropriate conditions and provided that the board makes specific findings of fact based on evidence relating to the following factors:

"(1) That there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of any provisions of this title; and

"(2) That such extension is in harmony with the general purpose and

intent of this title in securing the public health, safety and general welfare.

"(b) Variances. A variance may be granted in a specific case and from a specific provision of this title subject to appropriate conditions and provided that the board makes specific findings of fact based on evidence relating to the following factors:

"(1) That there are practical difficulties or unnecessary hardships in the way of carrying out the strict letter of the provision;

"(2) That the effect of the application of the provisions would be arbitrary in the specific case;

"(3) That an extension would not constitute an appropriate remedy for these practical difficulties or unnecessary hardships and this arbitrary effect; and

"(4) That such variance is in harmony with the general purpose and intent of this title in securing the public health, safety and general welfare. . . ."

[5] General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

[6] General Statutes § 4-166 (1) provides: " 'Agency' means each state board, commission, department or officer authorized by law to make regulations or to determine contested cases, but does not include either house or any committee of the General Assembly, the courts, the Council on Probate Judicial Conduct, the Governor, Lieutenant Governor or Attorney General, or town or regional boards of education, or automobile dispute settlement panels established pursuant to section 42-181."

[7] We note that the letter of compliance issued by the Initiative to the defendant related only to the plaintiff's premises and not to other infested units in the building.

[8] General Statutes § 47a-4a provides: "A rental agreement shall not permit the receipt of rent for any period during which the landlord has failed to comply with subsection (a) of section 47a-7."

[9] The plaintiff further contends that a "market rent construction is the only interpretation consistent with two other sources of legislative policy: Connecticut's ban on source of income discrimination and the federal statutory goals of subsidized housing." As we explain further in this opinion, we do not interpret the plain language of § 47a-14h as discriminating against subsidized tenants. The statute provides for damages in the form of rent abatement of the full amount of the tenant's rent that is paid to the court, in addition to the return of the subsidizing entity's portion of the rent when such is paid to the court.

We similarly find the plaintiff's reliance on out of state authority to be unavailing. None of the cases cited by the plaintiff involved the application of a statute with language similar to that of § 47a-14h. See *Multi-Family Management, Inc.* v. *Hancock*, 664 A.2d 1210, 1213, 1224 (D.C. App. 1995) (Ferren, J., concurring) (concluding that, in absence of claim asserted by subsidizing entity, subsidized tenant was entitled to full abatement of rent on counterclaim alleging breaches of implied warranty of habitability); *Cruz Management Co.* v. *Wideman*, 417 Mass. 771, 773, 633 N.E.2d 384 (1994) (affirming trial court's award of damages based on contract rent for subsidized tenant's counterclaim alleging common-law breach of implied warranty of habitability).

[10] General Statutes § 47a-18a provides: "If the landlord makes an entry prohibited by section 47a-16 or 47a-16a, or makes repeated demands for entry otherwise lawful but which have the effect of unreasonably harassing the tenant, the tenant may recover actual damages not less than an amount equal to one month's rent and reasonable attorney's fees. The tenant may also obtain injunctive relief to prevent the recurrence of the conduct or terminate the rental agreement."

[11] General Statutes § 47a-16 provides in relevant part: "(c) A landlord shall not abuse the right of entry or use such right of entry to harass the tenant. The landlord shall give the tenant reasonable written or oral notice of his intent to enter and may enter only at reasonable time, except in case of emergency.

"(d) A landlord may not enter the dwelling unit without the consent of the tenant except (1) in case of emergency, (2) as permitted by section 47a-16a, (3) pursuant to a court order, or (4) if the tenant has abandoned or surrendered the premises."

[12] We note that there is no evidence in the record before us indicating that the plaintiff at any time requested that the subsidizing entity be made a party to the action.